**MICHAEL G. LUTZ LODGE NO. 5 OF THE FRATERNAL ORDER OF POLICE, Appellant**

v.

**CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2013.

Decided Jan. 2, 2014.

Thomas W. Jennings, Philadelphia, for appellant.

Shannon D. Farmer and Meredith C. Swartz, Philadelphia, for appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Michael G. Lutz Lodge No. 5 of the Fraternal Order of Police (FOP) appeals from the Philadelphia County Common Pleas Court's (trial court) December 27, 2012 order denying its petition to vacate the October 6, 2011 court notice interest arbitration award (2011 Award). The issues for this Court's review are: (1) whether the trial court erred by concluding that the June 15, 2010 proceeding before the interest arbitration panel (Panel) constituted interest arbitration hearings,[1] as opposed to grievance arbitration hear-

---

1. Interest arbitration hearings address disputes concerning the **terms** of a collective bargaining agreement. *Town of McCandless v. McCandless Police Officers Ass'n,* 587 Pa. 525, 901 A.2d 991 (2006).

ings;[2] (2) whether the trial court erred by improperly applying the narrow certiorari scope of review;[3] and, (3) whether the trial court erred by failing to vacate the portion of the 2011 Award that changed the court notice distribution procedures for police officers.

The FOP is the exclusive collective bargaining representative of the City of Philadelphia's (City) police officers. The FOP and the City have long been parties to collective bargaining agreements. After the parties were unable to agree on the terms and conditions of a July 1, 2009 to June 30, 2014 collective bargaining agreement (CBA), the Panel was convened and hearings were held pursuant to the Policemen and Firemen Collective Bargaining Act (Act 111).[4]

One of the issues before the Panel was the manner in which the City police department (Department) notified police officers for court appearances they were expected to attend within 48 hours of the proceeding. Said notices purportedly caused severe disruptions to the officers' personal lives. The FOP presented considerable evidence on this issue. On December 18, 2009, the Panel issued an interest arbitration award (2009 Award) for the parties' CBA. Section 14 of the 2009 Award stated:

Effective January 1, 2010, officers who do not receive notice at least 48 hours in advance of the time they are directed to appear for a required court appearance, other than a preliminary hearing, scheduled for a date the officer is not scheduled to work, shall be paid a minimum of 4 hours of overtime at a rate of 2.5 times the employee's regular rate.

Reproduced Record (R.R.) at 26a. Section 22 of the Panel's 2009 Award also provided: "The Panel shall retain jurisdiction over this [2009] Award in order to resolve any disputes regarding implementation of its terms."[5] R.R. at 28a.

On January 13, 2010, the Department issued a "General Message" to all commanding officers and Department heads regarding "Notices With Less Than 48 Hours Notice," which quoted the above-captioned language, and added:

2. THE 48 HOUR NOTIFICATION STARTS WHEN THE OFFICER IS NOTIFIED.

3. THE OVERTIME RATE WILL NOT APPLY TO DUPLICATE COURT NOTICES FOR THE SAME COURT CASE WHICH ARE RECEIVED [WITHIN] LESS THAN 48 HOURS OF THE COURT DATE[,] PROVIDED THAT THE FIRST NOTICE WAS RECEIVED 48 HOURS OR MORE BEFORE THE SCHEDULED DATE.

4. IF AN OFFICER HAS COURT ALREADY SCHEDULED ON THEIR

---

2. Grievance arbitration hearings involved differences over the **interpretation** of the collective bargaining agreement terms. *Town of McCandless v. McCandless Police Officers Ass'n*, 587 Pa. 525, 901 A.2d 991 (2006).

3. The FOP referred to the narrow certiorari "standard" of review. However, the Pennsylvania Supreme Court has held that "[a]s narrow certiorari sets the confines in which an appellate court may conduct its examination, it sets a *scope* of review, and not a standard of review." *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 71 n. 4, 656 A.2d 83, 85–86 n. 4 (1995).

4. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. "Policemen and Firemen Collective Bargaining Act" or "Act 111" are the commonly-used names for the Act. It has no official title.

5. A Supplemental Award was issued relative to Pension Plan 09, which has no bearing on Sections 14 or 22 of the 2009 Award.

REGULAR DAY OFF AND THEY RECEIVE AN ADDITIONAL COURT NOTICE FOR A DIFFERENT CASE WITH LESS THAN 48 HOURS NOTICE, THEY ARE NOT ENTITLED TO THE ADDITIONAL OVERTIME RATE. THIS OFFICER WAS PREVIOUSLY SCHEDULED FOR COURT AND THE NEW NOTICE DID NOT CAUSE A DISRUPTION IN THE OFFICER'S SCHEDULE [sic].

5. IF AN OFFICER IS PROPERLY NOTIFIED OF A JURY TRIAL (AT LEAST 48 HOURS NOTICE) AND THE CASE IS CONTINUED TO THE NEXT DAY, THE OFFICER IS NOT ENTITLED TO THE ADDITIONAL OVERTIME. THE OFFICER HAS BEEN NOTIFIED OF THE TRIAL AND THERE IS NO DISRUPTION TO THE OFFICER'S SCHEDULE.

6. COMMANDING OFFICERS WILL ENSURE THAT ALL PERSONNEL UNDER THEIR COMMAND ARE MADE AWARE OF THE CONTENTS OF THIS MESSAGE.

R.R. at 208a–209a, 217a–218a, 358a. In response to the above "General Message", the FOP filed a series of grievances contesting the City's alleged failure to abide by Section 14 of the 2009 Award. *See* R.R. at 407a–460a. By March 7, 2010 email, the FOP asked the Panel for "an IMMEDIATE hearing before the Panel to resolve issues that have arisen regarding the City's implementation of the overnight court notice provisions of [the 2009] Award." R.R. at 405a.

On June 4, 2010, in advance of the hearing, the City provided the FOP and the Panel with its proposed resolution of "Implementation of Court Appearances."

Supplemental Reproduced Record (S.R.R.) at 1b–2b. The FOP did not object to the City's submission.[6] The Panel held an evidentiary hearing on June 15, 2010. On September 16, 2011, a majority of the Panel issued the 2011 Award in which the Panel held, in pertinent part:

[T]he heart of Section 14 is the timeliness of court appearance notification. The City arbitrator and Chair see the manner of notification to be part-and-parcel of Section 14's provisions in that the manner of notification is as much a part of Section 14's implementation as is the question of what days would the premium overtime payments cover. Leaving the manner of notification untouched would be a dereliction in the Board's responsibility to resolve issues pertaining to the implementation of the [2009] Award's substance.

After considering the vigorous arguments of both sides, a majority of the Board is persuaded that notification in the 21st Century can effectively be achieved by the use of either telephone calls or email. Since all officers are already required to provide a telephone contact number to the Department this same number can be used for court notices. For those who have ready access to computers with email, that technology is also an effective means of notification. Officers should be free to choose which method they prefer, and the Department should comply with that request. Additionally, it is wise to encourage the parties to confer through their representatives directly so they can resolve any difficulties in these methods of notification that may be unforeseen by the Panel. The parties are further encouraged to

---

6. The Dissent negatively characterizes the City's proposed resolution as an "eleventh hour request." However, the record reveals that the City furnished its documentation eleven days before the hearing, no time constraints were violated, and the FOP did not object to the City's submission.

develop techniques that will enhance the notification process for both sides.

. . . .

*Award:*

. . . .

[T]he City will be required to pay back pay for the City's failure to pay double time and a half for "late" notices of jury trials on regularly scheduled days off only as follows:

. . . .

4. Effective November 15, 2011[,] the City shall be permitted to deliver court notices in accordance with the following:

a. No later than November 1, 2011[,] all officers shall be required to provide the Department with either an e-mail address or a telephone number at which the officer will receive court notices. If the officer chooses telephonic notice, the telephone number used for such notice may be the same as the number provided to the Department under current requirements. An officer who chooses telephonic notice is required to maintain an answering machine or voice mail service on the designated number. It is the officer's responsibility to keep this information current with the Department at all times.

b. As of November 1, 2011[,] an officer who fails to designate an e-mail address or telephone number to the Department for court notices shall not be entitled to receive overtime at the 2.5 rate provided for in Section 14 [of the 2009 Award], and shall be further subject to discipline under relevant Department policies requiring the furnishing of information.

c. The Department will use the officer's designated e-mail address or telephone number to notify the officer of court appearances. In addition, the Department shall provide notice of court appearances at the officer's district in accordance with current practice.

. . . .

e. Officers are required to comply with all court notices.

FOP Br. Ex. 1 (2011 Award) at 10–14. Only the FOP's arbitrator objected to the Panel's inclusion of the City's notice procedure amendments on the basis that the Panel was re-drafting CBA terms which went beyond the Panel's limited jurisdiction of hearing disputes regarding implementation of the CBA's existing terms.

The FOP filed a petition with the trial court to vacate the 2011 Award. The trial court denied the petition on December 27, 2012. The FOP appealed to this Court. Thereafter, the trial court issued its opinion on March 6, 2013.

■■■ The FOP first argues that the trial court erred by concluding that the proceedings before the Panel constituted interest arbitration hearings, as opposed to grievance arbitration hearings. We disagree.

> 'Grievance' or 'contract interpretation' arbitration is distinguished from 'interest' arbitration. **'Grievance arbitration'** is the arbitration which occurs when the parties disagree as to the **interpretation** of an **existing** collective bargaining **agreement**. 'Interest arbitration' is the arbitration which occurs when the employer and employee are unable to agree on the **terms** of a collective bargaining **agreement**.

*Town of McCandless v. McCandless Police Officers Ass'n,* 587 Pa. 525, 528 n. 2, 901 A.2d 991, 993 n. 2 (2006) (emphasis added).

In its 2009 Award, an interest arbitration award, the Panel expressly retained jurisdiction over that Award in order to **resolve any disputes regarding imple-**

**mentation of its terms.** The FOP did not object to the Panel's retention of jurisdiction to resolve CBA term implementation.[7] Equally as important, the FOP expressly invoked Section 22 by requesting "an IMMEDIATE hearing before the Panel **to resolve issues that have arisen regarding** the City's **implementation of the overnight court notice provisions of [the 2009] Award.**" R.R. at 405a (emphasis added). The FOP's request mirrors Section 22's language: "retain jurisdiction ... to resolve any disputes regarding implementation of its terms." R.R. at 28a. In addition, at the June 15, 2010 hearing, the FOP did not object to the neutral arbitrator's opening statement:

> This hearing has been convened to address an issue that arises out of the 2009 interest arbitration awarded by the [P]anel and issued December [the] 18th of 2009 concerning court notices.

> I also should mention that Section 22 of the [2009 Award] retains jurisdiction of the [P]anel for issues that arise from the **implementation of that order,** so that is our jurisdiction, and the court notice

aspect of the [2009 Award] is the substantive **reason that we're here today.** R.R. at 204a (emphasis added).

Moreover, the FOP presented evidence that Officer John Spence was disciplined for approving 2½ times overtime pay for late jury trial notices in accordance with the 2009 Award; however, it did not offer that discipline evidence as a grievance for the Panel's resolution. In fact, neither the FOP or the City used the word "grievance" at any time during the Panel hearing. See R.R. at 257a–279a. In its posthearing brief to the Panel, the FOP notably did not argue that the hearing was a "grievance" hearing or even mention "grievances." See R.R. at 384a–400a.

Although the FOP supplied copies of certain pending grievances related to the City's implementation of Section 14 of the 2009 Award with its appeal briefs to the trial court and this Court, there is no record evidence that those grievances were submitted to the Panel for resolution. See R.R. at 437a–460a. Rather, **the FOP's grievances** related to Section 14 notice provisions **were disputed separately** in accordance with Section XXI of the CBA (i.e.

---

7. Notably, the 2009 Award is not the first time an interest arbitration panel has retained jurisdiction for the limited purpose of resolving "any disputes regarding implementation of its terms." R.R. at 28a. On at least one previous occasion, in a 1989 award, an interest arbitration panel similarly retained jurisdiction for the exclusive purpose of resolving implementation issues between the City and the FOP. See City of Phila. v. Fraternal Order of Police Lodge No. 5, 677 A.2d 1319 (Pa. Cmwlth.1996). This Court has held that "a party may assert the illegality of a provision of [an interest arbitration] award in a subsequent proceeding because the party had no opportunity to bargain with respect to the award's term." Pennsylvania State Corr. Officers Ass'n v. Commonwealth, 976 A.2d 1236, 1242 (Pa.Cmwlth.2009). Here, the FOP never raised the legality of Section 22, although it had ample opportunity to do so. Moreover,

even if the FOP now challenged the legality of the Panel's retention of jurisdiction, consistent with this Court's holdings in West Pottsgrove Township v. West Pottsgrove Police Officers' Association, 791 A.2d 452 (Pa.Cmwlth. 2002) and Greater Latrobe Area School District v. Pennsylvania State Education Association, 150 Pa.Cmwlth. 441, 615 A.2d 999 (1992), we would hold:

> [N]othing under Act 111 or the parties' CBA precluded the arbitrator from retaining such jurisdiction. Moreover, the arbitrator's retention of jurisdiction serves to avoid ... delay in final resolution, unnecessary time and expense and relitigation. Thus, we cannot say that the trial court erred as a matter of law in affirming the arbitrator's award insofar as the arbitrator retained jurisdiction....

West Pottsgrove Twp., 791 A.2d at 457.

filed with the Police Commissioner or designee within 30 days), to be presented before a single American Arbitration Association-approved arbitrator. *See* R.R. at 170a–171a, 407a–460a.

In its 2011 Award, the Panel deemed the issue before it as follows: "Under what circumstances does Section 14 of the [2009] Award require the City to pay 2½ times an officer's regular wages for required court appearance on a day the officer is not scheduled to work?" 2011 Award at 4. The City's proposal introduced to the Panel at the hearing addressed "Implementation of Court Appearances" provisions in the 2009 Award. S.R.R. at 1b–2b. Based upon the foregoing, the FOP's request, as well as the FOP's conduct at the hearing, there is not one scintilla of evidence to have put the Panel on notice or to support the FOP's position that it deemed the June 15, 2010 Panel hearing a grievance arbitration hearing.

The trial court noted the following facts, and recognized that the FOP's petition to vacate makes clear that the FOP did not consider the Panel proceeding to be a grievance arbitration:

> Notably, the FOP did not petition ... to vacate paragraph 2 of the [2011] Award, which directly adopts points 2 and 3 of the General Memorandum issued by the Department ... [which] were adopted by the [Panel] ... to implement the 2009 Award, consistent with the City's position that this was an extension of the interest arbitration between the parties, in accordance with the retention of juris-

diction in [Section] 22 of the 2009 Award.

FOP Br. Ex. 3 (Trial Ct. Op.) at 10–11. Thus, it is clear that the FOP took issue with the manner in which court notices are delivered (relative to the CBA term), rather than their effect on the officers (grievances). The trial court concluded that "if [the] FOP actually intended to initiate a grievance arbitration before the ... Panel, it would have done so as it did in the numerous other instances when it filed grievances in accordance with [CBA] procedures, which it did not." Trial Ct. Op. at 11.

The facts of this case make clear that the 2011 Award implicated the Panel's interest arbitration role. Given that an interest arbitration panel has in the past retained jurisdiction to resolve implementation conflicts between these parties; the FOP did not object to the Panel's retention of jurisdiction to resolve CBA term implementation; the FOP expressly invoked the Panel's jurisdiction to resolve court notice implementation issues; and there is absolutely no record evidence that the FOP intended the June 15, 2010 proceeding as a grievance arbitration, we hold that the trial court did not err by concluding that the 2011 Award arose from an interest arbitration proceeding.[8]

■ The FOP next asserts that the trial court erred by improperly applying the narrow certiorari scope of review. We disagree. Procedurally, having determined that the June 15, 2010 proceeding was an interest arbitration hearing, nar-

---

8. The Dissent admits:

> [T]he Panel properly exercised its retained jurisdiction over ... the manner by which the City implemented [P]aragraph 14 of the Award—*i.e.,* its challenge to the City's General Message and amendments to Directive 15. The Panel appropriately determined whether those implementation efforts were

consistent with the Panel's intent in the Award. I also believe that the Panel, under its retained jurisdiction, could have resolved any disagreements between the FOP and the City concerning an interpretation or clarification of the terms of the Award, including [P]aragraph 14.

Dissenting Op. at 360.

row certiorari was the proper scope of review.[9] "Appellate review of an Act 111 arbitration award is in the nature of narrow *certiorari*. It is limited to issues regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; and, (4) deprivation of constitutional rights." *Fraternal Order of Police, Flood City Lodge No. 86 v. City of Johnstown*, 39 A.3d 1010, 1012 n. 8 (Pa.Cmwlth. 2012).

In reviewing this action under narrow certiorari, we initially note that there is no challenge to the regularity of the proceedings or deprivation of constitutional rights. With regard to the remaining two prongs, the FOP acknowledges the distinction between an arbitration panel being without jurisdiction and it exceeding its power. However, the FOP does not fully develop its argument, but rather reverts to its main issue that the Panel was convened to hear a grievance, not sit as an interest arbitration panel.

As our Supreme Court in *City of Philadelphia v. International Association of Firefighters, Local 22*, 606 Pa. 447, 999 A.2d 555 (2010) (*Local 22*) recognized, there is some confusion in the application of narrow certiorari review between the two legal concepts of whether an arbitration panel has acted outside its jurisdiction or exceeded its power.

In applying narrow certiorari review in this case, the Commonwealth Court noted that 'whether a matter involves arbitral authority or jurisdiction is not always clear[,]' and set forth its ruling by

stating that the arbitration board 'exceeded its jurisdiction and/or authority[ ]'.... **The court's apparent reluctance to specifically determine which one (or two) grounds of narrow certiorari-jurisdiction or the excessive use of powers-was implicated, and the inconsistent treatment these grounds have received in cases suggest that they are not thoroughly understood.**[FN12]

FN12 In some cases, courts have viewed the assertions made here, i.e., that provisions of an Act 111 award concerned a matter that fell outside the scope of collective bargaining in the Act or resolved an issue not placed in dispute, as raising a question of the board's jurisdiction. *See, e.g., Westmoreland [Cnty.] v. Westmoreland [Cnty.] Detectives*, 937 A.2d 618, 620 n. 2 (Pa.Cmwlth.2007); *Marple Twp. v. Delaware [Cnty.], FOP, Lodge 27*, 660 A.2d 211, 215 (Pa.Cmwlth.1995). In other cases, however, the courts have viewed such assertions as raising a claim that the board exceeded its powers. *See, e.g., Town of McCandless v. McCandless Police Officers Ass'n*, 952 A.2d 1193, 1197 (Pa.Cmwlth. 2008); *[Bd.] of Supervisors of Butler Twp. v. Butler Twp. Police Dep't* [153 Pa.Cmwlth. 306] 621 A.2d 1061, 1064 ( [Pa.Cmwlth. ]1993). This Court, too, has lapsed into imprecision in this area. *Compare City of Philadelphia v. FOP, Lodge No. 5*, 564 Pa. 290, 768 A.2d 291, 296 (2001)[.]

*Local 22*, 606 Pa. at 461–62, 999 A.2d at 563–64 (emphasis added).

 The Supreme Court continued by specifically analyzing the nature of an arbitration award that addresses an issue not raised by the parties, stating, "an award that embraces an issue that was not placed in dispute in accordance with Act 111's requirements may be challenged under

9.
Where resolution of the issue turns on a pure question of law, or the application of law to undisputed facts, our review is plenary. However, where it depends upon factfinding or upon interpretation of the [CBA], we apply the extreme standard of deference

applicable to Act 111 awards; that is, we are bound by the arbitrator's determination of these matters even though we may find them to be incorrect.
*Pennsylvania State Police v. Pennsylvania State Troopers Ass'n*, 840 A.2d 1059, 1062 (Pa.Cmwlth.2004).

narrow certiorari as reflective of an excess of powers." *Local 22*, 606 Pa. at 465, 999 A.2d at 566. The Dissent appears to have mischaracterized the ground for narrow certiorari at issue in this matter as jurisdictional rather than one of arbitral authority.[10] However, jurisdiction is not at issue since there is no question that the Panel was initially convened and subsequently reconvened to resolve disputes arising out of the CBA's court notice provision.

Thus,

> our inquiry is limited to a determination of whether the arbitration panel exceeded its powers.... [A]n arbitration board exceeds its power when it mandates that the public employer carry out an illegal act ... or perform an action unrelated to a bargainable term or condition of employment[.]

*Dep't of Corr. v. Pennsylvania State Corr. Officers Ass'n*, 608 Pa. 521, 537, 12 A.3d 346, 356 (2011) (citations omitted). "An award pertaining to an issue that was not placed in dispute before the board also reflects an excess of the arbitrators' powers."[11] *Id.* at 537 n. 15, 12 A.3d at 356 n. 15. "[T]he excess of powers prong of narrow certiorari focuses upon the particular action an arbitration board took in resolving an Act 111 dispute and asks whether the action was authorized." *Local 22*, 606 Pa. at 463, 999 A.2d at 564. There is no allegation here that the Panel mandated the City to perform an illegal act, and it is clear that the FOP placed the court notice issue squarely before the Panel. Thus, in order to determine if the Panel exceeded its powers, this Court need only look at whether the Panel mandated performance of an action unrelated to a bargainable term or condition of employment.[12] Based upon the law and this record, we hold that it did not.

The Pennsylvania Supreme Court has held "that interest arbitration panels are empowered to award any terms or condi-

---

10. "I believe that the interest arbitrator panel (Panel) lacked jurisdiction to alter a decades-old practice...." Dissenting Op. at 355.

11. The Dissent disagrees with the Majority holding because it believes "the issue of the method by which the City provides notice to police officers was not before the Panel." Dissenting Op. at 360. The Concurring and Dissenting Opinion likewise states that the Panel "rewrote notice provisions that were not subject to collective bargaining." Concurring/Dissenting Op. at 361. Although the Dissent maintains that "[n]othing in the FOP's statement of issues addressed the question of the manner by which the City must provide police officers with notices of court appearances," the Dissent itself points out that the FOP's Issue 16 did in fact ask the Panel to include in the CBA a requirement for "48 hours **written** notice." Dissenting Op. at 356–57. Moreover, "Section 4(a) of Act 111 does not limit the authority of arbitrators to only 'except' or 'reject' the proposed resolutions of specific issues. Once an *issue* is properly placed in dispute, arbitrators are free to resolve that issue in a fair manner within the total context of the award." *Bd. of Supervisors of Butler Twp. v. Butler Twp. Police Dep't*, 153 Pa.Cmwlth. 306, 621 A.2d 1061, 1064 (1993) (citation omitted).

12. The Dissent's reliance on *Bensalem Township v. Bensalem Township Police Benevolent Association*, 803 A.2d 239 (Pa.Cmwlth.2002), for the proposition "that arbitrators exceed their jurisdiction when they address a question not submitted to them by the parties," is misplaced. Dissenting Op. at 356. First, *Bensalem Township* involves a grievance arbitration case, not interest arbitration. Second, contrary to the Dissent's statement, *Bensalem Township* does not stand for the proposition that the Panel here lacked jurisdiction. Rather, in *Bensalem Township*, this Court held that even though the back pay award clearly exceeded the CBA's express provisions, since the arbitrator did not mandate the City to carry out an illegal act or to do something the City could do voluntarily, under the narrow certiorari review, the Court could not say the arbitrator exceeded its authority.

tions of employment to which a public employer and its police or fire employees may voluntarily agree." *Moon Twp. v. Police Officers of Moon Twp.*, 508 Pa. 495, 507, 498 A.2d 1305, 1311 (1985). Here, Section 14 of the 2009 Award made clear that if officers are not afforded at least 48 hours notice of (other than preliminary hearings) court appearances affecting their regular days off, they are entitled to extra compensation. In Paragraphs 2 and 3 of the 2011 Award, the Panel recognized that Section 14's 2009 Award implementation required clarification, and adopted Points 2 and 3 of the Department's General Message.[13] In Paragraph 2 of the 2011 Award, the Panel stated that if an officer received a timely court notice for one day of a court case, he is not entitled to overtime pay if he does not receive timely notices for additional days involving the same case. It also ruled that if an officer received timely notice in one case, he will not receive the overtime premium if he does not get notice for another case on the same day, since his personal time had already been disrupted. *See* 2011 Award at 12. Finally, in Paragraph 4 of the 2011 Award, the Panel clarified the manner in which the notices referred to in Section 14 of the 2009 Award were to be delivered to the officers. In Paragraph 4, the Panel stated that the Department shall provide notice in person at the officer's district in accordance with current practice. Paragraph 4 also provided that notices could be delivered to the

officers by telephone, as was the current practice, and added that voicemail message would also suffice as notice. Paragraph 4 further permitted notice via e-mail at an e-mail address specified by the officer. *See* 2011 Award at 13–14. The Panel proceeding directly related to the 2009 Award of mandatory premium overtime in instances when the City fails to give proper notice.

At no time throughout the 2011 Panel proceeding did the FOP object to the continuous references to the 2009 Award. It is evident on its face that the 2011 Award was the Panel's clarification of the provisions it originally set forth in Section 14 (related to court appearance notices) of the 2009 Award, which was a bargainable term and/or condition of employment. Thus, the Panel did not exceed its powers by mandating an action unrelated to a bargainable term or condition of employment.

The FOP contends that the Panel's notice delivery provisions in the 2011 Award constituted an "arbitral frolic." FOP Br. at 26. The 2011 Award itself disproves the FOP's contentions. The 2011 Award continued the personal and telephone notice practices, and merely extended the notification options to include existing technology in the form of voicemail and e-mail where the officer expressly chooses those means. There is no requirement that an officer pay to have voicemail or e-mail solely dedicated to court notices. The

---

**13.** The Dissent's and Concurring and Dissenting Opinion's conclusions notwithstanding, the court notice requirement is an employment term that has long been a subject of bargaining between these parties. As the Dissent admitted, once the FOP placed the General Message's treatment of the court notice provision before the Panel, the Panel was authorized to hear any issues related thereto. Dissenting Op. at 360; *see* fn.8 herein. Similarly, the trial court specifically noted—the FOP did not petition to vacate Paragraph 2 of

the 2011 Award which incorporated points 2 and 3 of the City's General Message. Point 2 of the General Message reads: "The 48 hour notification starts when the officer is notified." R.R. at 358a. If one is required to have notice and notice commences at a specific point in time for the purpose of calculating premium overtime pay, then what constitutes notice is fundamentally intrinsic to the court notice provision. As will be discussed below, as a direct result of the residency requirement change, how to implement the notice requirement was put into issue.

FOP also conceded that "the issue of court notices has been a part of the part[ies]'s contractual fabric for decades." R.R. at 386. Moreover, Department Directive 13, in existence since November 19, 1999, which the FOP presented to the Panel during the June 2010 hearing, memorialized the Department's practice of notifying off-duty officers of late-hour court notices by telephone or physical message delivery.[14] *See* R.R. at 220a, 284a.

The trial court stated that the 2011 Award did not exceed the Panel's powers because it related to the terms and conditions of employment, did not require an illegal act, and did not consider issues not presented to it by the parties. *See* Trial Ct. Op. at 12. The trial court pointed out that "the FOP has not alleged that [P]aragraph 4 of the [2011] Award touched on matter[s] that are not terms and condi-

tions of employment," and that the FOP conceded that court notice issues have existed for decades. Trial Ct. Op. at 12. It also held that the "FOP placed the implementation of the 2009 Award court notice provision squarely [before] ... the Panel[ ]...." Trial Ct. Op. at 12. The trial court concluded that "given the narrow certiorari [scope] of review, once it is clear that the [Panel] acted within the scope of its authority in deciding a matter properly before it, as it did here, this Court's inquiry has ended." Trial Ct. Op. at 15–16.

At the June 2010 Panel hearing, the City submitted its proposal and testimonial evidence, and the FOP had the opportunity to challenge such evidence that the manner in which notice was delivered after imposition of Section 14 of the 2009 Award was financially and operationally a different matter

---

**14.** If the Department failed to reach an officer by telephone, a police car was sent from the district office where the officer lives to knock on his door to notify him. *See* R.R. at 232a. The 2009 Award for the first time allowed qualified officers to reside outside the City. *See* R.R. at 23a. The City presented evidence that prior methods of dispatching units to deliver personal notification would be significantly more costly and would require the assistance of smaller, outlying police departments with fewer resources. *See* R.R. at 239a–242a, 329a.

The Dissent's reading of Directive 13 that notice must be "confirmed" adds language and an intent into that Directive which is not present. Although Directive 13 requires an officer's platoon supervisor to "ensure subpoenaed personnel sign, date, and retain two copies of the notice," there is absolutely no requirement that the officer confirm receipt of notice at the time it is delivered. R.R. at 285a. As Directive 13 and the testimony reveal, when limited time requires telephone notification, and an officer could not be reached, then message delivery is to be attempted at the officer's home. *See* R.R. at 232a. According to Directive 13, the notifying officer must document on the notice and the sending/receiving report his name, rank, badge number and how notification was made. *See* R.R. at 284a. Thus, even personal

delivery to an officer's home did not ensure notice or confirmation of the notice. When asked by the Panel what happened if messages are left for the officer by phone at his house and he does not appear in court, the City Inspector replied: "It happens all the time .... then the court case would be continued...." S.R.R. at 40b. The record evidence is clear that there is no requirement that the subpoenaed officer "confirm" his receipt of the notice.

Moreover, contrary to the Dissent's assertions, the additional notification methods granted by the 2011 Award do not thwart the Department's "decades-old" notification practice, but rather they enhance it for the benefit of both parties. Based on the increased use of cellular telephones, the availability of call forwarding and elimination of land lines, and the ability to receive e-mails via cellular telephones, there exist a higher probability of ensuring notice to the subpoenaed officer which is the purpose of the CBA's notification requirement. Ensuring that timely notice has been delivered is also increased through cellular telephone voicemails, which service is included at no additional charge, and the "request receipt" e-mail setting. Directive 13 was issued before the use of cellular telephones and e-mails was commonplace, the contrary being true today.

than it was before Section 14 was imposed. As the trial court pointed out, the testimony before the Panel made it clear that "the 2009 Award changed the terms and conditions of the parties' CBA, which necessitated a change in policy for the Department to effectuate the implementation of the residency and 48–hour notice provisions in a way that was both operationally and fiscally sound."[15] Trial Ct. Op. at 14; *see also* R.R. at 238a–239a. "The [Panel] recognized in its [2011] Award that the issue of how court notices are delivered relates directly to how the court notification provision is implemented" (i.e., the overtime premium pay is triggered by untimely notification). Trial Ct. Op. at 14. Accordingly, the Panel did not exceed its authority, and the trial court did not improperly apply the narrow certiorari scope of review.

■ The FOP also argues that the trial court erred by failing to vacate the portion of the 2011 Award that changed the court notice distribution procedures for police officers. We disagree. The trial court held that the Panel did not alter the CBA's terms with the 2011 Award. It ruled:

[T]here is nothing in the [CBA] providing for paper notice of court appearances or delivery of that notice by any particular method. Although there had

been a practice in place for a number of years that officers may receive notice in person[,] that was not always the case as both Directive 13 and the testimony at the June 15, 2010 hearing demonstrate that notice by phone has been accepted practice in the Department for a number of years.... Moreover, the practice of delivering notices [to] officers' homes in person when the notice cannot be delivered at work or the officer reached by telephone[,] was substantially impacted by the new [CBA] provisions on court overtime and on residency imposed by the [Panel] in its 2009 Award.

Significantly, ... the [Panel] did not alter the terms of [P]aragraph 14 of the 2009 Award or any provision of the [CBA]. The City remains liable for penalties when notifications are not made within 48[ ]hours. Nor did the [Panel] subtract or take away 'terms and conditions' of employment, as the FOP suggests.

Trial Ct. Op. at 16. The trial court deemed unpersuasive the FOP's argument that the 2011 Award now allows officers to be disciplined for not complying with the court notice provisions, stating:

Directive 13 provides: 'Whenever a police officer fails to appear or reports late for court, commanding officers will en-

---

15. The Concurring and Dissenting Opinion acknowledges that an arbitration panel may retain jurisdiction "for special purposes" and to make final determinations on procedural matters. Concurring/Dissenting Op. at 361–62. It also concedes that the Panel here "reserved jurisdiction to implement what it awarded," specifically "to insure that [its award] was carried out." Concurring/Dissenting Op. at 362–63. The Concurring and Dissenting Opinion concludes, however, that since the 2009 Award did not contain specific language about court notice distribution, that portion of the 2011 Award spelling out notification procedure should have been vacated. Yet, the change in the "decades-old" practice

of requiring officers to live in the City directly correlated to an enhancement of the "decades-old" court notification practice.

Contrary to the Dissent's position, the fact that the residency requirement change initially applied only to officers enrolled in the deferred retirement option program (DROP), and then was expanded to officers with 5 or more years of service, does not change the fact that all officers living outside the City can be subpoenaed to appear in court at any time, that the Department has a duty to notify them of their court appearances, and that the City is required to make premium overtime payments of 2½ times their wages when late notification occurs.

sure that an investigation is initiated and appropriate action is taken when necessary'.... The Department's disciplinary code makes failure to comply with a court notice a disciplinary offense and has done so for years.... Thus, the [2011] Award did not 'rewrite' those alleged 'terms and conditions' as the FOP alleges.

Trial Ct. Op. at 17. The trial court explained that while the FOP complains about the potential burden the 2011 Award has now placed on an officer, it failed to present any evidence at the June 2010 hearing that officers do not have e-mail addresses, cellphones or computers, which now serve as an additional notification mechanism.

The trial court concluded:

The [Panel] viewed the implementation issues before it within the appropriate context and based on all the evidence and testimony presented. The [2011] Award represents a sound interpretation of the 2009 Award, and did not impermissibly add to, subtract from, or alter the terms of the parties' CBA or the 2009 Award.

Trial Ct. Op. at 17–18. Discerning no error by the trial court, particularly in light of the mandatory deference to be given to the Panel, we will not disturb the 2011 Award. Accordingly, the trial court committed no error by finding that the 2011 Award did not impermissibly change the court notice distribution procedures for police officers, and by upholding the Panel's 2011 Award.

Based upon the foregoing, the trial court's order is affirmed.

### ORDER

AND NOW, this 2nd day of January, 2014, the Philadelphia County Common Pleas Court's December 27, 2012 order is affirmed.

### DISSENTING OPINION BY Judge BROBSON.

Because I believe that the interest arbitration panel (Panel) lacked jurisdiction to alter a decades-old practice of the City of Philadelphia (City), which required the City to provide personal (actual) notice of hearings to police officers, I would vacate paragraph 4 of the 2011 Interest Arbitration Award (Supplemental Award). I, therefore, respectfully dissent.

As the City concedes, since at least 1999, the City's policy, known as "Directive 13," provided the procedure by which police officers would receive a court notice. (Reproduced Record (R.R.) 282a–97a.) The primary method of notification was through a subpoenaed officer's platoon supervisor. Notice would be given to the supervisor, who was required under the policy to ensure that the subpoenaed officer receives and signs the notice. Specifically, the supervisor would "[e]nsure [that] subpoenaed personnel sign, date, and retain two copies of the notice." (*Id.* 285a.) If, however, the time between receipt of the notice and the court appearance date did not permit the notification of the supervisor, the Operations Room Supervisor (ORS) was required to promptly notify the officer by telephone or message delivery to the officer's home. I read the policy as requiring a *confirmed* notice—*i.e.,* actual notice to the officer. In other words, notice was not affected by merely leaving a voice mail message or by placing a written notice in the police officer's mail box. Requiring actual/confirmed notice to the subpoenaed officer made sense, because Directive 13 also required that subpoenaed officers appear in court on time and be prepared to testify. (*Id.* 282a.) If the police officer would be late to court or was

unable to attend, Directive 13 required the officer to notify the ORS of the lateness or absence. (*Id.* 286a.) A subpoenaed officer could do neither of these if the officer lacked actual notice of the subpoena and court proceeding. Moreover, absence from or lateness to a court proceeding triggered an investigation and possible adverse action against the subpoenaed officer. (*Id.* 288a.) This penalty provision further supports the importance of confirmed notice as set forth in the City's policy.

In 2009, having reached an impasse in their contract negotiations for a successor to the expiring collective bargaining agreement, the parties proceeded to interest arbitration under the Policemen and Firemen Collective Bargaining Act (Act 111).[1] The Panel convened pursuant to a request for the appointment of a board of arbitration. Section 4(a) of Act 111, 43 P.S. § 217.4(a), requires the party seeking arbitration to provide notice to the other party "containing specifications of the issue or issues in dispute." Here, both the City and Appellant Michael G. Lutz Lodge No. 5 of the Fraternal Order of Police (FOP) noticed and submitted issues to the Panel. This Court has held, consistent with our narrow certiorari scope of review, that arbitrators exceed their jurisdiction when they address a question not submitted to them by the parties. *See Bensalem Twp. v. Bensalem Twp. Police Benevolent Ass'n, Inc.,* 803 A.2d 239, 242 (Pa.Cmwlth.2002), *appeal dismissed,* 578 Pa. 70, 849 A.2d 1152 (2004).

The FOP submitted its issues to the City on January 30, 2009. (R.R. 31a–60a.) Issue 12, titled "Residency," includes a request that effective July 1, 2009, no police officer should be required to live in the City as a condition of employment. (*Id.* 43a.) Issue 16 was titled "Appearances

Before Civil or Judicial Bodies." (*Id.* 45a–46a.) In that issue, the FOP requested that a provision in the prior collective bargaining agreement relating to a "Court Notice Committee" be deleted and the following provisions added:

(A). An employee who has received a Court Notice requiring his/her appearance on a Regular Day Off ("RDO") shall receive a six (6) hour minimum payment at the overtime rate; and

(B). An employee who receives a Court Notice requiring his/her appearance in any criminal or civil proceeding, regardless of source, in less than forty-eight (48) hours prior to such receipt, regardless of scheduled starting time, shall be paid a minimum of four (4) hours at double time and double time for all hours, if any, in excess of said four hours.

(C). No bargaining unit employee shall be disciplined for failure to appear at a court hearing, or for failure to timely appear at a court hearing, that is preceded by less than 48 hours written notice to that employee.

(*Id.*) By these proposals, then, the FOP sought contractual terms that would have imposed a 48–hour notice requirement on the City and a late-notice overtime premium to the officer if the City fails to provide prompt notice. It also protected the police officer from discipline if the City failed to provide prompt notice. Issue 47, titled "Unaffected Provisions," provided:

*Except as may be otherwise specifically provided herein,* all terms and conditions of employment of the parties, *and practices relating thereto,* shall remain in full force and effect for the duration of the successor Collective Bargaining Agreement as described in these Proposals.

---

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–.20.

(*Id.* 59a (emphasis added).) Nothing in the FOP's statement of issues addressed the question of the manner by which the City must provide police officers with notices of court appearances.

The City submitted its statement of issues in dispute on February 4, 2009. (*Id.* 61a–91a.) The City too sought changes to the prior collective bargaining agreement language relating to appearances before civil or judicial bodies. (*Id.* 69a.) None of those suggested revisions related to *the manner* by which the City would provide notice to police officers. The City did request a general provision be added to the agreement that would cap any overtime payments by the City to its police officers at a rate of no more than 1.5 times the regular rate of pay for any work hour. (*Id.* 67a.)

On May 19, 2009, months after it had received the FOP's statement of issues to be arbitrated, the City submitted an amendment to its statement of issues in dispute. (*Id.* 91a–128a.) Despite being on notice that the FOP sought to arbitrate, *inter alia,* imposition of a prompt notice requirement and overtime premium with respect to notices of court proceedings and relaxation of the residency requirement, the City did not include in this supplement any request to change the manner by which the City historically, and pursuant to its own written policy, provided notice of court appearances to police officers.

After multiple days of hearings in May, July, and September 2009, the Panel issued its award on December 18, 2009

(Award), detailing the terms of the parties' collective bargaining agreement effective July 1, 2009, through June 30, 2014. (*Id.* 5a–30a.) With respect to court appearances, paragraph 14 of the Award provides:

> Effective January 1, 2010, officers who do not receive notice at least 48 hours in advance of the time they are directed to appear for a required court appearance, other than a preliminary hearing, scheduled for a date the officer is not scheduled to work, shall be paid a minimum of 4 hours of overtime at a rate of 2.5 times the employee's regular rate.

(*Id.* 26a.) Paragraph 6 of the Award also relaxed the residency requirement as follows:

a. Effective July 1, 2010, employees who are eligible for or currently enrolled in the DROP [ (deferred retirement option plan or program) ] will not be required to live in the City of Philadelphia.

b. Effective January 1, 2012, employees who have five (5) or more years of service as a police officer in the City of Philadelphia will not be required to live in the City of Philadelphia.

c. All employees will be required to reside in the Commonwealth of Pennsylvania.

(*Id.* 23a.) [2]

For purposes of this appeal, there are two other noteworthy provisions of the

---

**2.** In footnote 3 of its brief, the City attempts to correlate the relaxation of the residency requirement to the prompt notice penalty provision in paragraph 14, by claiming that both provisions had the same effective month of January 2010. As the quoted language above reflects, however, this is not the case. Paragraph 14 of the Award is effective as of January 1, 2010. But paragraph 6, relating to relaxed residency, is effective at its earliest on July 1, 2010, or six months later, and then only as to a certain class of police officers who, at the time of the award, were enrolled in the City's DROP. According to Philadelphia Code Section 22–310(2), "[e]ligible employees who elect to participate in the DROP make an irrevocable commitment to separate from City service and retire upon ceasing participation

Award. Paragraph 22, titled "Retention of Jurisdiction," provides that "[t]he Panel shall retain jurisdiction over this Award in order to resolve any disputes regarding implementation of its terms." *(Id.* 28a.) Paragraph 23, titled "The Existing Agreement," provides:

> Except as modified by this Award, all other terms and conditions contained in the collective bargaining agreement between the City and the FOP in effect from July 1, 2008 to June 30, 2009 shall remain in effect. All other proposals and requests for changes submitted by the City and the FOP to the Panel, which have not been specifically addressed in this Award, were considered and have not been awarded.

*(Id.* 24a.) Neither the City nor the FOP exercised its opportunity to challenge the Award in the court of common pleas.

On March 7, 2010, the FOP, invoking paragraph 22 of the Award (Retention of Jurisdiction), requested an "IMMEDIATE hearing before the Panel to resolve issues that have arisen regarding the City's implementation of the overnight court notice provisions of that Award." *(Id.* 405a.) As the Panel majority notes in the Supplemental Award, the FOP's complaints arose out of a "General Message" issued by the City's Police Department, ostensibly to implement paragraph 14 of the Award:

Less than one month after the Award was promulgated, the City's Police Department ("the Department") issued a "General Message" relating to court notices to all officers. (FOPX 3). The General Message first recited the exact language of Section 14. It then (1) defined the 48–hour notification period as starting when the officer is notified, (2) stated that the "overtime rate" would not apply if duplicate court notices for the same case are sent and the earlier notice was received more than 48 hours before the schedule appearance time, and (3) exempted from the double and one-half time pay for those notices that were received within the 48–hour period when the officer already had more than 48 hours notice of an appearance in a different case on the same day. *The FOP did not take issue with any of those policies.*

> However, the General Message further stated:

> If an Officer is properly notified of a jury trial (at least 48 hours notice) and the case is continued to the next day, the officer is not entitled to the [double and one half] overtime.

In explaining the Department's position on that issue, the General Message stated, "The officer has been notified of the

---

in the DROP, which they must do no later than four (4) years after entering the DROP." To be eligible to participate in a DROP, the employee must have reached retirement age for purposes of the employees' pension plan and have a certain minimum number of years of credited service. Thus, the residency requirement is only relaxed initially for police officers who have reached retirement age and have committed to retire within a few years. The next class of employees who benefit are those who have 5 or more years of service. But that provision did not become effective until January 1, 2012, or 2½ years into the five-year Award.

Given the staggered implementation of paragraph 6 during the term of the Award and its application to only certain police officers, the record is insufficient, at best, to draw any connection between paragraph 6 of the Award and alleged increased costs associated with personal service of court notices to police officers living outside of the City, such that the City can reasonably rely on paragraph 6 as a basis for its belated request to change its long-standing policy for providing notice of court proceedings to on- and off-duty police officers.

trial and there is no disruption to the officer's schedule."

*That portion of the General Message instigated the FOP's request for the Board to exercise jurisdiction over implementation of Section 14, as provided by Section 22.*

(Supp. Award 3–4 (emphasis added).) In reviewing a copy of the General Message in the Reproduced Record (R.R. 419a), it is noteworthy that there is no reference to a need for or a desire by the City to modify the means by which the City historically provided notice of court proceedings to police officers. The General Message is simply silent in this regard. By this time, however, the City was fully aware of the Award and its terms, particularly the relaxed residency, prompt notice, and overtime premium provisions. And despite modifying its court notice procedures in response to the Award, it did not make any modification in the General Message or in Directive 13 to *the manner*, or method, of providing notice.

Nonetheless, on June 4, 2010, just eleven days before the Panel was set to convene to hear the FOP's complaints about implementation, the City sent a letter to the chair of the Panel, enclosing "the City's proposed resolution to the issue of how the court appearances language awarded in the 2009 FOP Award should be implemented." (S.R.R. 1b–2b.) In addition to proposing limiting language on when a police officer would be entitled to receive the new overtime premium in paragraph 14 of the Award, an issue clearly encompassed in the City's General Message as well as the FOP's request to reconvene the Panel under paragraph 22 of the Award, the City raised, for what appears to be the first time from my review of the record of this particular Act 111 interest arbitration proceeding, a request that the Panel sanction a change to the *method* by which the City would provide notice of court proceedings to police officers. The request provided as follows:

> The City shall be permitted to provide court notice of cancellation electronically to affected members. Members shall be responsible for providing a phone contact and/or email contact *where a message can be left at all times for such notice. A message left for the employee on the designated phone number or e-mail shall be sufficient notice.*

(*Id.* 2b (emphasis added).)

This is a significant change of the long-standing past practice in at least two respects. First, the City proposed to abandon its policy of requiring patrol supervisors to have the first-level responsibility of providing the police officer with notice. Second, the City proposed to abandon its policy of requiring actual, or confirmed, notice to the subpoenaed police officer in favor of a presumed notice scheme based merely on the recording of a voice-mail message or the sending of an email.

Based on the issue as presented by the FOP, the Panel framed the issue before it in the Supplemental Award as follows:

> Under what circumstances does Section 14 of the Award require the City to pay 2½ times an officer's regular wages for required court appearances on a day the officer is not scheduled to work?

(Supp. Award 4.) It then proceeded to evaluate the FOP's objections to the City's post-Award implementation of paragraph 14, as reflected in the General Message and revisions to Directive 13. A majority of the Panel rejected the City's effort to exclude from the 48–hour notice requirement and overtime premium provision certain court proceedings, in addition to preliminary hearings, which by the express terms of paragraph 14 were already excluded. (*Id.* 8–10.)

After addressing that issue, however, the Panel proceeded to take up the City's eleventh-hour request to modify the method by which it would provide court notices to police officers. As it does in this appeal, the FOP strenuously objected to the Panel taking up this request under the guise of an "implementation" issue with respect to paragraph 14 of the Award. The Panel majority, however, rejected this argument. But in doing so, the majority acknowledged:

> Admittedly the method by which the Department delivers court notices, both for duty days and days off, is a carry-over item from the parties' predecessor contract or at least a continuation of a practice to which the parties have assented for decades. A change in that practice *was not raised* during the interest arbitration hearings in 2009 that led to the Award, neither as a formal proposal as is required under Act 111 or as an ancillary concern to the FOP's proposal for premium overtime for court notices.

(*Id.* 10 (emphasis added).) Nonetheless, the majority, at the City's request, chose to change the policy because "notification is as much a part of Section 14's implementation as is the question of what days would the premium overtime payments cover. Leaving the manner of notification untouched would be a dereliction in the Board's responsibility to resolve issues pertaining to the implementation of the Award's substance." (*Id.* 11.)

I agree with the Panel majority's first instinct and finding, that being that the issue of the manner of notification was not before the Panel under Act 111. There is nothing in the record that established that the City and the FOP attempted to bargain to impasse what to me is clearly a mandatory subject of bargaining,[3] something that is required before parties may initiate interest arbitration under Act 111. *See Philadelphia Fire Officers Ass'n v. Pa. Labor Relations Bd.*, 470 Pa. 550, 369 A.2d 259 (1977).

I disagree with the Panel majority, however, in its conclusion that the issue was before the Panel pursuant to its reservation of jurisdiction under paragraph 22 of the Award. As set forth above, the issue of the method by which the City provides notice to its police officers, a matter of long-standing policy, was never before the Panel, because it was never bargained to impasse and was not included by either the FOP or the City in their statement of issues. The Panel cannot reserve jurisdiction over an issue that was never before it in the first place. *See Bensalem Twp.*, 803 A.2d at 242.

As far as implementation of the Award is concerned, it is clear to me that the Panel properly exercised its retained jurisdiction over the FOP's objections to the manner by which the City implemented paragraph 14 of the Award—*i.e.*, its challenge to the City's General Message and amendments to Directive 15. The Panel appropriately determined whether those implementation efforts were consistent with the Panel's intent in the Award. I also believe that the Panel, under its retained jurisdiction, could have resolved any disagreements between the FOP and the City concerning an interpretation or clari-

---

3. "Under Act 111, a matter is deemed a mandatory subject of bargaining if it bears a rational relationship to the employees' duties." *Pa. State Park Officers Ass'n v. Pa. Labor Relations Bd.*, 854 A.2d 674, 680 (Pa.Cmwlth. 2004), *appeal denied*, 582 Pa. 704, 871 A.2d 194 (2005). Here, the manner by which police officers are provided with notice of court proceedings, where their attendance is compelled by law and by the terms of their employment, bears a rational relationship to the officers' duties.

fication of the terms of the Award, including paragraph 14.

But it is equally clear to me that the issue of the method by which the City provides notice to police officers was not before the Panel. Thus, the City's request that the Panel endorse a change in the City's long-standing policy of providing actual notice cannot be considered a request to confirm the Panel's intent behind paragraph 14. Similarly, because paragraph 14 does not at all address the method of notice, the City's request cannot reasonably be considered a request for an interpretation or clarification of that provision. Thus, the City's request does not go to an issue of implementation of the Award.

The City's claims to the contrary are simply not persuasive, particularly in light of how and when this issue even came to the Panel's attention. Following the Award, the City actually took steps to implement paragraph 14 of the Award, by issuing the General Message and amending Directive 15. But absent from any of the City's post-Award implementation steps was a move to electronic notification of court proceedings. The City did not even raise the issue until about three months after the FOP filed its request for a hearing with the Panel and only eleven days before the Panel was scheduled to reconvene. The late hour at which the City raised its desire to move to electronic notification and constructive notice of court proceedings is a strong indication that such a move does not relate to the implementation of paragraph 14 of the Award.

As the Panel majority observed, electronic notification may very well be an efficient and more cost-effective mechanism to provide court notices to police officers. But in my view it is such a significant change in long-standing policy within the City and so rebalances the responsibilities of the City vis-a-vis its police

officers with respect to ensuring notice and attendance at court proceedings, that it must be raised properly in the context of Act 111—*i.e.*, bargained and, if necessary, arbitrated. Here, the instant Award extends through June 30, 2014. When the parties confer with respect to a successor agreement, it would be appropriate for the City to raise the issue of electronic notice then. I would, therefore, vacate paragraph 4 of the Supplemental Award. In all other respects, I would affirm the trial court.

Judge McGINLEY joins in this dissenting opinion.

CONCURRING AND DISSENTING OPINION BY Judge McCULLOUGH.

I concur with the Majority in its agreement with the trial court that the proceeding under review constituted an aspect of interest arbitration as opposed to grievance arbitration. However, I respectfully dissent from the Majority insofar as it concludes that the arbitrators did not overstep their authority when they rewrote notice provisions that were not subject to collective bargaining. Unlike the Majority, I would reverse the trial court and vacate that portion of the arbitration panel's decision that changed the longstanding and heretofore unchallenged procedure for the distribution of court notices under the pretext of an implementation order concerning an interest arbitration award that has nothing to do with the manner of notice distribution. I also write separately to clarify Act 111 interest arbitration and the orderly application of that statute which has resulted therefrom. This case can and should be decided by recognized and fundamental principles of both arbitration and common law which are not otherwise addressed in Judge Brobson's Dissenting Opinion.

While the Majority agrees with the trial court that the subject arbitration proceeding was "interest arbitration" as opposed to "grievance arbitration," that alone should not drive the determination of this case. This Court has adopted a modified form of the doctrine of *functus officio* such that the authority of an arbitrator is exhausted upon determination and publication of a final award absent retention of jurisdiction over express provisions of awards for special purposes. *See Schuylkill Haven Borough v. Schuylkill Haven Police Officers Association,* 914 A.2d 936, 941 (Pa.Cmwlth.2006) (arbitrators' award stated that "there will be a reopener in the contract solely to address issues of officer pension contributions"); *W. Pottsgrove Township v. W. Pottsgrove Police Officers' Association,* 791 A.2d 452, 456–57 (Pa. Cmwlth.2002) (arbitrators retained jurisdiction for the sole purpose of ensuring that a specific mandate for an actuarial study be followed); *Greater Latrobe Area School District v. Pennsylvania State Education Association,* 150 Pa.Cmwlth. 441, 615 A.2d 999 (1992) (unless the CBA provides otherwise, arbitrator can retain jurisdiction to make final determinations on procedural issues); *Police Officers of the Borough of Hatboro v. Borough of Hatboro,* 126 Pa.Cmwlth. 247, 559 A.2d 113 (1989) (arbitrators' award contained a "reopener provision" for the sole purpose of renegotiating wage provision of contract in the event that pension plan is required to include additional compensation in excess of annual base salary to compute retirement benefits in the future for any reason). *See also Northampton Township v. Northampton Township Police Benevolent Association,* 885 A.2d 81 (Pa.Cmwlth. 2005); *Stack v. Karavan Trailers, Inc.,* 864 A.2d 551 (Pa.Super.2004).

An example of where arbitrators retained jurisdiction of an interest arbitration panel can be found in *West Pottsgrove Township,* and is cited by the Majority in its footnote number 7 in support of its conclusion to uphold the change in notice distribution wrought by the implementation award. However, the arbitration panel in *West Pottsgrove Township* expressly retained jurisdiction to ensure that a specific mandate for an actuarial study be followed. This is clearly distinguishable from the actions of the panel here that rewrote notice provisions that were not bargained in arbitration or in the underlying interest arbitration.

In this case, the interest arbitration panel only reserved jurisdiction to implement what it awarded. The award itself said nothing about court notice distribution and it is clear from the record that the City had waived this issue in the main interest proceedings because it did not bargain over the issue and did not raise it in the subsequent interest arbitration proceedings. Consequently, had the panel changed distribution of court notices *sua sponte* in its award, such a determination would have been properly vacated. *See City of Wilkes–Barre v. City of Wilkes Barre Benevolent Association,* 814 A.2d 285, 291 (Pa.Cmwlth.2002) ("An interest arbitration award under Act 111 can embrace only those issues which the party requesting arbitration has specified in the written notice of arbitration. . . . As a principle of fairness, Act 111 requires that both parties have advance notice of the issues which are at stake.") (citing *In Re Arbitration Award Between Lower Yoder Township Police and Lower Yoder Township,* 654 A.2d, 651, 653 (Pa.Cmwlth.1995)).

Here, the interest arbitration panel retained jurisdiction only to see that its award was implemented, *i.e.,* to insure that it was carried out. The Majority however, would construe implementation as a reopener, not just as to the provisions of the award, but as to a contract provision that

was never a part of the arbitration process. If this be so, a host of arbitration awards may be re-opened to litigate matters not previously considered under the guise of implementation, thus undermining the need to avoid delay, unnecessary time and expense and relitigation. *See W. Pottsgrove Township,* 791 A.2d at 457.

While the Dissent reaches the correct result, *i.e.,* that the portion of implementation decision pertaining to court notice distribution should be vacated, it does so with a flawed opening premise, *i.e.,* by stating that an interest panel lacked jurisdiction to alter a notice provision. This is contrary to the presumption of correctness and legality that has been consistently ascribed to interest arbitration by the case law of this Commonwealth and invites efforts to expand the precept of "narrow *certiorari*" which necessarily limits court oversight of arbitration decisions. *See Department of Corrections and Department of Public Welfare v. Pennsylvania State Corrections Officers Association,* 608 Pa. 521, 12 A.3d 346 (2011) (reversing in part an *en banc* decision of this Court that vacated a portion of an interest arbitration award).

This needlessly complicates what should be the straightforward conclusion of this case—when a party waives consideration of an issue in interest arbitration proceedings, it should not be able to re-litigate that issue through the back door by way of implementing the interest arbitration award.