615 A.2d 999

**GREATER LATROBE AREA SCHOOL DISTRICT, Appellant,**

**v.**

**PENNSYLVANIA STATE EDUCATION ASSOCIATION and Greater Latrobe Education Association, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1992.

Decided Sept. 10, 1992.

Alex E. Echard, for appellant.

Ronald N. Watzman, for appellees.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

The Greater Latrobe School District (District) appeals from an order of the Court of Common Pleas of Westmoreland County which dismissed the District's appeal and affirmed an arbitrator's award ordering the District to place Charles T. Hixson into a teaching position for which Hixson had applied but had been denied voluntary transfer. We affirm.

Hixson began his employment with the District in 1975 as a sixth-grade industrial arts teacher, but he was involuntarily transferred to a senior high school position for the 1977–78 school term. During the 1978–79 term, Hixson was fur-

loughed due to declining school enrollment and used this time to obtain his elementary education certification. Hixson then returned to work as a sixth-grade elementary teacher for the 1979–80 school year, a position he held until the 1986–87 term when he was again transferred involuntarily and assigned to teach industrial arts at the senior high school.

In an effort to return to teaching at the elementary level, Hixson applied for a newly posted fourth-grade teaching vacancy in September 1989. Although Hixson was the only job applicant from the District's collective bargaining unit, the District determined that he was not the most qualified among the job seekers and denied his application. The District then filled the position with one of the substitute teachers from outside the unit who had applied.

On October 9, 1989, Hixson filed a grievance through the exclusive collective bargaining representative, the Greater Latrobe Education Association (GLEA), under the auspices of its parent, the Pennsylvania State Education Association (PSEA) (collectively, Association). In accordance with procedures set forth in the collective bargaining agreement between the District and its employees (Agreement), the grievance process culminated in binding arbitration. On August 10, 1990, following a hearing, the arbitrator determined that the District had violated Hixson's contractual right to voluntarily transfer to a position for which he was certified, in preference to any applicant from outside the bargaining unit.

The arbitrator based his determination upon Article XII.B of the Agreement, entitled Filling a Vacancy, which states:

1. If a permanent vacancy occurs in the bargaining unit and a properly certified employee applies for the vacancy, he will be granted an interview.

2. The Board agrees to fill any bargaining unit vacancy with an employee presently in its hire, provided that a qualified applicant is available and seeks the position.

. . . .

4. If no employee applies for the vacancy, or if present employees who do apply fail to demonstrate satisfactory

qualifications, the Board may fill the vacancy from outside the bargaining unit. . . .

It was the District's and Association's differing interpretations of the terms "certified", "qualified", and "satisfactorily qualified" in this Article which gave rise to Hixson's grievance. The Association contends that a state-certified teacher is automatically qualified to teach any subject for which he is certified; whereas, the District argues that certification is only the minimum prerequisite for qualification, and the District retains the right to establish higher standards for teachers to meet in order to demonstrate that they are satisfactorily qualified.

The arbitrator determined that under the latter interpretation, "satisfactory qualifications," no matter how trivial or arbitrary, could be custom tailored on an ad hoc basis to fit or to exclude predetermined candidates. In short, "satisfactory" would mean whatever the District chose it to mean in any particular case, rendering section B.2 of Article XII meaningless. The arbitrator found that such an interpretation negated the contractual rights of the individuals within the bargaining unit, saying:

> The School District argues that Article XII, Section B.4. adds a further condition. As the School District views that provision, the commitment it made in Section B.2. of Article XII to fill vacancies with employees in its hire is tempered by the addition of the word "satisfactory" in Section B.4. The qualifications of an employee in its hire, according to the School District, must be "satisfactory" to the Board in order for it to be bound by Section B.2. of Article XII. . . .
> *The Board's interpretation of the interplay between Section B.2. and B.4. of Article XII, must be set aside.* While the Board's interest in filling vacancies with well qualified employees is understandable, *it cannot use the word "satisfactory" i[n] Article XII, Section B.4. to eliminate totally the obligation it undertook in Section B.2. of that Article.* After all, the Agreement does not call for a relative ability or relative qualification test. . . . [If] It were given the weight urged for it by the School District, it *would amount*

*to eliminating the "agrees to fill" language in Section B.2. of Article XII. By making a series of clearly subjective judgments in the interview process an evaluator could wipe out the clear mandate of Section B.2. that employees "presently in the hire" are to fill bargaining unit vacancies.* What the Board agreed to do in one provision would thus be cancelled by assigning one admittedly qualified applicant ratings anywhere below those given to another candidate, even if the latter is one who is not presently in the hire of the School District. *Section B.2. and B.4. cannot be interpreted in that fashion. The former provision gives something to the bargaining unit employees and it cannot be taken away by the use of the word "satisfactory" in the latter provision. . . . the words "satisfactory qualifications" in Article XII Section B.4. cannot have the overriding effect which the School District attributes to them. . . .*

Decision in Elementary Teaching Vacancy Grievances, August 10, 1990, by Edward J. O'Connell, Arbitrator, at 13, 14, 15 (R.R. at 198a, 199a, 200a) (emphasis added).

However, although sustaining Hixson's grievance, the arbitrator ordered no immediate specific remedy, but rather left appropriate implementation of the award to the District, retaining jurisdiction in order to assure the District's compliance. The arbitrator stated in pertinent part:

Here, very clearly, contractual rights were denied. . . . This should not happen again. As a means of assuring that it does not, this award must be issued with a retention of jurisdiction to deal with any instances where the Grievant is denied a position on the same grounds present here; i.e., failure to demonstrate "satisfactory qualifications." His Industrial Arts certification is not to be revoked [as requested by Hixson in order to prevent future assignments in that subject], but it shall not be used as a vehicle to deprive him of rights established by the Agreement. The School District's right to assign him even on an involuntary basis is not reduced, so long as any such right to assign is not utilized to deprive the Grievant of contractual rights.

## AWARD

The grievances are sustained on the merits. This award is issued with a retention of jurisdiction as set forth above. *Id.* at 15, 16 (R.R. at 200a, 201a).

In fact, the District's compliance with this award was tested almost immediately. In July 1990, while still awaiting the arbitrator's decision, Hixson had applied for two other newly available elementary positions. However, in the weeks following the August 10, 1990 arbitrator's award, despite the arbitrator's clear instructions that "this should not happen again," the District denied Hixson both positions.

Faced with this noncompliance, the Association petitioned the arbitrator to reinstate the grievance arbitration under his retained jurisdiction for the limited purpose of ordering an immediate remedy. The arbitrator reopened the matter over the objections of the District and, following a rehearing, issued an expedited letter award on October 9, 1990, ordering the District to place Hixson immediately into the third grade position he applied for in July 1990. After the District's petition for a supersedeas was denied, Hixson was given the teaching position. On appeal, the trial court upheld the arbitrator's award and the District now appeals to this court.

Our scope of review on appeal from an award resulting from binding arbitration is limited to determining whether the arbitrator's award draws its essence from the collective bargaining agreement. *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 462 A.2d 629 (1983); *Petition of Wellsboro Area School District,* 78 Pa.Commonwealth Ct. 467, 467 A.2d 1197 (1983). In making this appraisal, we need only determine whether the terms of the agreement encompass the subject matter of the dispute. Once this is established, the validity of the arbitrator's interpretation is immaterial. *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981). The arbitrator's award is based on a resolution of a question of fact and we will not disturb it as long as it can rationally be derived from an interpretation of the agreement, viewed in light of its language, its context, and

other indicia of the parties' intent. *Neshaminy; Petition of Wellsboro Area School District,* 78 Pa.Commonwealth Ct. 467, 467 A.2d 1197 (1983). Although both the District and the Association agree that the essence test is our proper standard for review, they disagree regarding the content, or essence, of the Agreement; therefore, each party insists that this standard supports its own position.

██ The District first argues that the arbitrator's award failed the essence test because it did not derive its essence from the Agreement; rather, the arbitrator added to the Agreement in order to fashion the award. Specifically, the District asserts that the Agreement's grievance procedure precluded the arbitrator's use of the two July 1990 vacancies to fashion his remedy, citing Article XVIII, J.1 of the Agreement, which states:

1. The arbitrator shall have no power or authority to add to, subtract from, or modify the provisions of this agreement in arriving at a decision of the issue or issues presented and shall confine his decision solely to the application and interpretation of this agreement. The decision or award of the arbitrator shall be final and binding.

The District maintains that when it denied Hixson the later positions, he was required to file new and separate grievances for these new incidents. Contrary to the District's vigorous assertions, this article of the Agreement does not support its claim. In fact, nothing in the Agreement restricts the arbitrator's authority to structure either the grievance process or the award. Moreover, the record offers no indication that the arbitrator exceeded his authority or expanded his jurisdiction, either by subject matter or by procedure.

██ Stressing the broad deference enjoyed by the arbitrator,[1] the Association counters that the arbitrator's award here

1. The Association argues that when an arbitrator is commissioned to interpret and apply a collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem, particularly when it comes to formulating remedies. *Pennsylvania State Education Association v. Appalachia I.U. 08,* 505 Pa. 1, 476 A.2d 360 (1984). An arbitrator possesses the authority to fashion remedies necessary to further the intended essence of the bargaining

is rationally derivable from the Agreement and thus may not be overturned. We agree.

■ The essence test serves to prevent arbitrators from expanding the scope of their duties by rewriting contracts in an attempt to right wrongs, however well intentioned they might be. In his carefully drafted decision here, the arbitrator directly addressed the pertinent portions of the Agreement, arrived at a well reasoned and logical construction of the two provisions contested, and limited his findings and award to that narrow issue. Because the award arises directly from the Agreement, and addresses only those issues properly before the arbitrator, going no farther than necessary to remedy the situation, it unquestionably passes the essence test. Therefore we cannot disturb it.

Next, the District claims that the arbitrator's award must be reversed and vacated "because it illegally transgresses upon the legislative powers of the School Board and the statutory powers of the Superintendent." (Appellant's Brief, 39). The District asserts that the Public School Code [2] grants the District the exclusive right and duty to establish minimum job qualifications for its teachers. Based on this grant of power, the District argues that they would not be bound by provisions concerning the filling of vacancies by lateral transfers as construed by this award, because such provisions are preempted by the District's legislative powers under the Pennsylvania Public School Code. The District contends that the disputed Agreement provisions would be illegal as construed by the arbitrator, and therefore, void. This argument

agreement. *Neshaminy School Service Personnel Association v. Neshaminy School District,* 53 Pa.Commonwealth Ct. 262, 417 A.2d 837 (1980). The Association also cites *City of Scranton v. Shoemaker,* 59 Pa.Commonwealth Ct. 141, 428 A.2d 1048 (1981) (the court may not review the arbitration award on its merits nor substitute its judgment for that of the arbitrator), and *Scranton Federation of Teachers v. Scranton School District,* 498 Pa. 58, 444 A.2d 1144 (1982) (because parties to a collective bargaining agreement have bargained for the arbitrator's construction, a court should not intrude into the domain of the arbitrator because its interpretation of the agreement differs from the arbitrator's).

2. Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

requires that the District retain absolute discretion over the term "satisfactory qualifications," even in the matter of transfer of existing employees, in order to satisfy its statutory mandate. The District's argument is based on section 703 of the Public Employe Relations Act (PERA)[3] which provides:

The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

The District, in effect, claims that this section nullifies any provision in the Agreement which impinges on its managerial prerogatives under the Public School Code, and that the arbitrator's construction of "satisfactory qualifications" is such as impingement. This claim is not novel. The Pennsylvania Supreme Court dealt with this question in *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975), in which the court held that *"the passage of Act 195 was a repudiation of the traditional concept of the sanctity of managerial prerogatives in the public sector." Id.* at 504, 337 A.2d at 267 (emphasis added). The court went on to state:

The relationship between sections 701 and 703 is particularly significant in a highly regulated area such as public education.... The mere fact that a particular subject matter may be covered by legislation does not remove it from [mandatory] collective bargaining under section 701 if it bears on the question of wages, hours and conditions of employment. We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive.... *We therefore conclude that items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explicitly and*

3. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301, commonly referred to as "Act 195."

*definitively prohibit the public employer from making an agreement as to that specific term or condition of employment.*

*Id.* at 508, 510, 337 A.2d at 276, 278 (emphasis added).

■ Relying on *P.L.R.B. v. State College,* the Association contends that there is no statutory prohibition against a collective bargaining provision which sets terms to fill a bargaining unit vacancy. The Association argues that the District mischaracterizes the vacancy provision as one impermissibly dealing with employee hiring when, in fact, that provision deals only with the reassignment of teachers currently employed by the District, and does not attempt to limit the District's exercise of its prerogative to establish requirements for persons being newly hired by the District. We agree.

There is no question that under the Public School Code, the District has the prerogative to establish standards for teachers seeking to enter its employ, so long as those standards are equal to or higher than those minimums set by the statute. However, the subject of these contract provisions is the voluntary reassignment or transfer of its current employees, those who already met the "satisfactory qualifications" standards current when they were hired. Clearly, the question of voluntary transfer by current employees within the bargaining unit's membership is a matter encompassed by the terms and conditions of employment and so is well within the purview of section 701 of PERA.

Finally, the District argues that the arbitrator improperly retained jurisdiction and so lacked jurisdiction in the reopened arbitration. The District reasoned that because the stated policy of both Act 195 (PERA) and the Agreement encourages the arbitrator to promptly finalize an arbitration award, the arbitrator's retention of jurisdiction here was precluded as delaying the final result. The District claims that the Agreement provides a grievance and arbitration procedure which precludes retention of jurisdiction by the arbitrator for any reason, including bifurcating the process, and therefore, the arbitrator violated the essence of the Agreement.

The District thereby seeks to distinguish the instant case from *Scranton Federation*, which upheld the arbitrator's authority to retain jurisdiction and hold a bifurcated hearing in order to fashion a remedy. The District argues that in *Scranton Federation*, the parties "failed to provide the arbitrable procedure in the Collective Bargaining Agreement" and therefore, the arbitrator could structure a bifurcated hearing; whereas, the Agreement here precluded retention of jurisdiction and reopening for a second hearing.

The Association directly, and correctly, counters the District, contending that nothing in PERA, the Uniform Arbitration Act, or the Agreement precludes an arbitrator from retaining jurisdiction. Unless a collective bargaining agreement specifically states otherwise, the arbitrator has jurisdiction to make final determinations on procedural issues. All issues of interpretation and procedure are for the arbitrator to resolve. *School District of the City of Duquesne v. Duquesne Education Association*, 475 Pa. 279, 380 A.2d 353 (1977); *Shaler Area Education Association v. Shaler Area School District*, 61 Pa.Commonwealth Ct. 211, 433 A.2d 168 (1981). Contrary to the District's claim, the Agreement between these parties does not preclude the arbitrator's determination of procedure; therefore, the retention of jurisdiction in this case, a procedural matter, was within the exclusive province of the arbitrator.[4] In fact, the reopening of arbitration under retained jurisdiction, in order to afford remedy under the original award, not only is permissible, but also fulfills the arbitration policy of PERA to provide inexpensive, expeditious contractual remedies. Excessive delay and expense would have resulted if resolution of Hixson's grievance required new grievance procedures and possible arbitration. Far from delaying the final resolution of the grievance, the arbitrator's

4. We agree with the logic of the Association's contention that if, as the District has maintained, the arbitration was closed and the award of August 10, 1990 was final when issued, the District waived any right to object to the arbitrator's retention of jurisdiction by failing to appeal from that award within 30 days of its issuance.

retention of jurisdiction served to prevent repeated relitigation of essentially the same dispute.[5]

Accordingly, we hold that the arbitrator's retention of jurisdiction and exercise of the retained jurisdiction was reasonable and justifiable. The arbitrator properly utilized his authority in arranging for prompt closure of the matter, albeit not in the manner we might have chosen.[6] In addition, we note that jurisdiction was retained for an extremely brief period, and that the District had it entirely within its own control to dispose of the matter immediately by following the clear directive of the arbitrator's award.

The question of contractual rights in intradistrict transfers, voluntary and involuntary, is one of particular significance at this time. Due to dropping school enrollments, many teachers have been furloughed or involuntarily transferred to teach subjects or grade levels in which they are not comfortable. Hixson himself had been furloughed once and was twice involuntarily transferred from the elementary level to teach at the high school.

5. The grievance process had produced no decision or award in almost ten months. The record indicates several delays caused by the District's failure to meet its contractual deadlines; however, the length of the process even if expedited by both parties would have run well into the second half of the school term and led to a similar result.

As to the right of the arbitrator to retain jurisdiction in order to fashion a remedy if his directed award is not implemented, *Scranton Federation* provides further direction. In *Scranton Federation*, we had vacated an arbitrator's award because the parties had not stipulated to bifurcating the proceeding. Although acknowledging the courts' general disapproval of bifurcating arbitration proceedings, our supreme court reversed, holding it an insufficient justification for overriding the arbitrator's decision.

6. Although the arbitrator might have avoided this conflict by issuing a more direct and definitive award initially, we respect the arbitrator's apparent effort to permit the District to adopt its manner of providing the required remedy. The District negated that effort. By not installing Hixson either in the original position (for the upcoming term) or in one of the new elementary vacancies for which he had applied in July 1990, the District apparently convinced the Arbitrator of its intention to retain full control of the transfer process regardless of the contract language or its interpretation by the arbitrator. Thus, the arbitrator was forced to direct an immediate remedy in order to implement his original award. We uphold his right and jurisdiction to do so.

When a school district properly exercises its statutory pre-rogatives [7] or its contractual rights to suspend, to furlough, or to redistribute its personnel resources by involuntary transfer, such moves must be tolerated by those affected. Having suffered such furlough and involuntary transfers, Hixson repeatedly sought to obtain voluntary transfer under the terms of his collective bargaining agreement in order to resume teaching at the elementary level. The arbitrator found that Hixson, having made proper application for a posted vacancy, was qualified for transfer to an elementary vacancy and concluded that he had a contractual right to such placement in preference over any potential new employee. The arbitrator's award placed Hixson in an existing vacancy, a remedy unlikely to disrupt other employees' status.

We are not convinced by the District's arguments; therefore, we hold that the trial court properly upheld the arbitrator's award and we affirm its decision.

## ORDER

AND NOW, this 10th day of September, 1992, the order of the Court of Common Pleas of Westmoreland County, dated August 27, 1991, is affirmed.

---

7. Public School Code, 24 P.S. § 11–1124(2), provides that:
Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:
. . . .
(2) curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction. . . .