# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media Secretaries        :
Educational Support Personnel      :
Association - ESPA, PSEA-NEA     :
                               :    No 965 C.D. 2015
          v.                  :    Argued: February 8, 2016
                               :
Rose Tree Media School District,    :
                Appellant    :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION**
**BY JUDGE SIMPSON**                 **FILED: March 21, 2016**


        This case involves a grievance arbitration award issued under the Public Employe Relations Act (PERA).[1]  Rose Tree Media School District (Employer) appeals two orders of the Court of Common Pleas of Delaware County[2] (trial court) upholding the award of Arbitrator Margaret R. Brogan (Arbitrator), which reinstated S.M. (Grievant), an employee discharged for mistreatment of a special needs student.  Review of an arbitration award issued under PERA is governed by the highly deferential "essence test" subject to a narrow "public policy exception."  See Phila. Hous. Auth. v. Am. Fed. of State, Cnty. & Mun. Emp., Dist. Council 33, Local 934, 52 A.3d 1117, 1120 n.5. (Pa. 2012); Pa. Turnpike Comm'n v. Teamsters Local Union No. 77 (Teamsters Local

---

[1] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§1101.101-1101.2301.

[2] The Honorable C. Michael Green presided.

77), 87 A.3d 904 (Pa. Cmwlth. 2014). Under the essence test, a reviewing court may vacate a PERA arbitration award only where the award is indisputably and genuinely without foundation in, or fails to logically flow from, the underlying collective bargaining agreement (CBA). If the essence test is satisfied, the court may further consider whether the award violates a well-defined and dominant public policy. Id. Discerning no error in the trial court's refusal to consider the evidentiary record in the arbitration proceeding, and in the court's determination that Arbitrator's award was rationally derived from the CBA and did not result in the violation of a well-defined, dominant public policy, we affirm.

## I. Background
## A. November 2011 Incident

Arbitrator found the following facts. Grievant worked for the School District since 2000. Beginning in 2002, Grievant began working as a one-on-one special education aide at the District's Indian Lane Elementary School. Prior to the November 2011 incident resulting in her discharge, Grievant worked with five special education students.

Eventually, Employer assigned Grievant to work with L.M. (Student), a special education student with Down's syndrome. Employer, however, did not provide Grievant with any training to assist her in working with a Down's syndrome child.

On November 18, 2011, Grievant met Student, who arrived at school late. Grievant's first duty was to take Student to his classroom. Because the class

2

already started, Grievant stood with Student in the hallway for a moment. During that time, Grievant took Student's lunch and placed it in a cart in the hallway. Patty Tulskie (Reading Interventionist), a parent of a Down's syndrome child, was also present in the hallway.

When the time came for Student to enter the classroom, he refused. Grievant stated she took Student's hand and gently spoke to him. Grievant encouraged Student to walk in and see his friends. However, when Grievant attempted to enter the classroom, Student dropped to the ground and lay on the floor in a prone position.

According to Employer, Grievant then pulled Student by his arm to his desk, a total distance of over 20 feet. Grievant, however, did not harm Student; he did not cry out. Further, no other children in the classroom expressed any reaction.

The classroom teacher, Wendy Barton (Teacher), saw Grievant pulling Student and made no effort to intervene. Rather, Teacher continued to teach the class. Reading Interventionist also witnessed the incident, but she did not personally check to see if Student was alright.

Nevertheless, Reading Interventionist complained about the incident to Teacher. Thereafter, Teacher reported Grievant's conduct to Julia Davis (Special Education Teacher). Grievant also self-reported her conduct to Special

3

Education Teacher. In turn, Special Education Teacher reported the incident to the school's principal, William Bennett (Principal).

After speaking with Special Education Teacher, Principal met with Grievant, who immediately apologized and expressed remorse. Principal told her he was disappointed with her behavior and talked to her about alternative approaches she could employ in a similar situation.

After talking to Grievant, Principal placed Student back in her care. Principal stated he believed Student would be safe in Grievant's care. Principal also believed Grievant's actions were not the result of anger or any attempt to hurt Student. As a result, Student remained in Grievant's care for the rest of the day.

Principal reported the incident to Employer's Director of Human Resources, Anne Callahan (HR Director), who advised Principal she would contact Superintendent and then get back to him.

Later that day, HR Director told Principal to advise Grievant to attend a meeting on the following Monday, November 21, 2011. At the end of the meeting, HR Director placed Grievant on unpaid leave. Eight days later, HR Director advised Grievant and her union representatives that Employer recommended Grievant's discharge.

**B. Grievance Filed**

Following Employer's notice of intent to seek Grievant's dismissal from employment, her union, Rose Tree Media Secretaries & Educational Support Personnel Association (Association), filed a grievance under the terms of Article VI of the parties' collective bargaining agreement (CBA). See CBA at 21-22 (Grievance Procedure); Reproduced Record (R.R.) at 28a-29a.

In March 2012, a committee of Employer's Board of School Directors (Board) held a grievance hearing. Following the hearing, the Board committee recommended Grievant be dismissed from District employment. Thereafter, the Board discharged Grievant.

**C. Arbitration**

The parties then proceeded to the final step of arbitration and selected Arbitrator to hear and decide the grievance. In January 2013, Arbitrator held a hearing providing the parties a full opportunity to present all relevant testimonial and documentary evidence. Following the hearing, the parties submitted briefs.

**D. Award**

In May 2013, Arbitrator issued her opinion and award. See R.R. at 74a-86a. In her opinion, Arbitrator framed the issue as: "Whether [Employer] had just cause for [Grievant's termination], and if not, what shall be the remedy?" Arbitrator's Op., 5/5/13 at 1; R.R. at 116a. Arbitrator noted the parties stipulated at the hearing that she had jurisdiction to determine the remedy. Id.

Next, Arbitrator summarized the parties' positions. Employer maintained it had just cause to dismiss Grievant because she engaged in egregious conduct by dragging Student from the hallway to his desk inside the classroom. Employer claimed this exposed Student to a risk of injury.

More specifically, Employer argued Grievant's conduct, including her inappropriate interaction with Student, her extremely poor judgment, and her inability to appropriately manage Student, provided a proper basis for dismissal under Section 514 of the School Code of 1949 (School Code).[3] Section 514 authorizes Employer to remove any of its officers or employees for incompetency, neglect of duty, a violation of any of the school laws of the Commonwealth, or other improper conduct. 24 P.S. §5-514.

Employer maintained that Grievant's conduct during the incident rose to the level of incompetence or neglect of duty and constituted a violation of school laws. In particular, Grievant's lack of composure and poor judgment showed her incompetence. Grievant's failure to nurture and assist a special needs child, instead of dragging him on the floor, reflects a clear neglect of duty. Employer also argued Grievant's mistreatment of Student violated school laws.

Consequently, Employer argued Grievant's conduct provided just cause for her dismissal. Thus, Employer urged Arbitrator to deny the grievance.

---

[3] Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §5-514.

Conversely, the Association asserted Employer did not have just cause to terminate Grievant from her position as a one-on-one aide based on the nature of her conduct during the incident. Rather, the Association maintained Employer's unjustified dismissal of Grievant constituted a grossly disproportionate response to this one incident.

The Association further maintained the parties' CBA specifically sets forth a system of progressive discipline. Therefore, the Association urged Arbitrator to uphold the grievance and issue an order reinstating Grievant without loss of income, benefits, seniority or retirement. The Association also requested that Arbitrator direct Employer to remove any reference to the dismissal from Grievant's personnel file.

Arbitrator determined Employer failed to meet its burden of establishing just cause for Grievant's discharge. Rather, Arbitrator observed, Grievant's conduct warranted a lesser penalty. Arbitrator noted that the parties granted her the ability to impose a lesser penalty in the absence of just cause for discharge.

In determining whether just cause for dismissal existed, Arbitrator recognized that just cause for dismissal must be proportional to the conduct. In the present case, the penalty of discharge was not commensurate with the proven conduct.

Arbitrator first focused on the characterization of Grievant's conduct. Although Employer asserted Grievant pulled Student by the wrist and dragged him for a distance of over 20 feet, the Arbitrator concluded the incident occurred in line with the Grievant's testimony. The Arbitrator noted the actions of Teacher and Reading Interventionist were not consistent with Employer's "dragging" characterization. They neither intervened nor checked to see if Student suffered any harm. In short, they did not see a need to attend to Student.

Therefore, Arbitrator credited Grievant's testimony that she took Student by the hand and attempted to coax him into the classroom. At some point he dropped to the ground, and Grievant continued to pull him to his desk. Grievant did not act out of anger and did not harm Student.

Similarly, Arbitrator observed, Principal spoke to Grievant about her conduct and expressed his disappointment with her behavior. Principal also instructed Grievant as to alternative strategies if a similar incident should occur. However, Principal did not take Grievant out of service. Rather, Principal returned Grievant to work caring for Student. Principal testified he did not believe Grievant would hurt Student.

Further, HR Director, after being advised of Principal's action, made no change. As a result, Grievant cared for Student for the rest of the day. Arbitrator noted that if Grievant actually engaged in the egregious conduct alleged by Employer, Principal would not have returned Student to her care.

In rejecting Employer's position that Grievant's conduct constituted just cause for her dismissal, Arbitrator reasoned (with emphasis added):

> We are left with [Grievant's] conduct, as she describes. Pulling a child in this manner is not an acceptable practice and should not be repeated. <u>But there are many factors which weigh in [Grievant's] favor, and lead to the conclusion that a lesser penalty, short of discharge, is warranted. First, [Grievant] is a ten year special education aide with an unblemished work record. She has received nothing but positive evaluations and many compliments for her care of special needs children. Second, [Grievant] was immediately forthcoming, apologetic, and remorseful about her conduct, showing that corrective discipline would reasonably change her behavior.</u> As a long-term employee without prior discipline, [Grievant] should be afforded that opportunity, and I am unconvinced that her behavior diminished her ability to effectively care for children going forward. As stated above, [Grievant] did not act in anger, nor has she displayed any type of bad temperament in caring for the children in her charge. [Student] was unharmed. [Grievant] exhibited that she is a caring aide who obviously has a special gift in dealing with the needs of the students.

Arbitrator's Op. at 10-11; R.R. at 126a-27a.

In addition, Arbitrator expressly found Grievant's conduct did not rise to the level of a violation of public school laws. Arbitrator's Op. at 11; R.R. at 127a.

Arbitrator also recognized the parties' CBA did not limit her ability to modify the penalty in the situation where, as here, she did not find Employer

established just cause for Grievant's dismissal.  Id.  As such, Arbitrator issued the following award (with emphasis added):

> In line with the above Opinion, <u>I find that there was not just cause for the discharge of [Grievant] and the grievance is upheld.  [Grievant's] discharge shall be converted to a five (5) day suspension</u>.  By way of remedy, [Employer] shall reinstate [Grievant] to her former or substantially similar position, with full seniority, benefits and retirement, and shall make [Grievant] whole for her losses, including back pay and benefits, for the period of time from the end of her suspension until her reinstatement, less any substitute interim earnings.  [Employer] shall further remove all references to [Grievant's] discharge from [Grievant's] records.  The suspension shall run from the first day that [Grievant] was placed on unpaid leave.

Arbitrator's Award, 5/5/13; R.R. at 128a.

### E. Employer's Appeal

Employer filed a timely petition for appeal of the Arbitrator's award. Employer alleged Arbitrator's award failed to draw its essence from the CBA, the award failed to focus on Grievant's mistreatment of Student and instead focused on other employees' response to it, and the mistreatment of Student constituted a clear violation of public policy.

With regard to the alleged violation of public policy, Employer requested that the trial court review the "particular circumstances at hand and the factual findings of the arbitrator." City of Bradford v. Teamsters Local Union No. 110, 25 A.3d 408, 414 (Pa. Cmwlth. 2011).  Citing Bradford, Employer argued that a public policy analysis requires a full and complete review of the underlying

dispute in order to determine whether Arbitrator's award, if implemented, poses an unacceptable risk to the safety of the students and the prevention of abuse. Employer maintained this can only be accomplished by a review of the transcript of the hearing before the Arbitrator.

## F. Trial Court's Bifurcated Decision
### 1. Hearing Transcript

At the request of parties, the trial court used a bifurcated approach and briefing schedule. First, the parties submitted briefs on Employer's request that the trial court review the transcript from the arbitration hearing and include it as part of the certified record. In December 2014, the trial court issued an order denying Employer's request to include the transcript as part of the record for review in Employer's appeal. Tr. Ct. Order, 12/19/14; R.R. at 103a.

In an opinion in support of its order, the trial court observed, under the two-pronged essence test, the reviewing court first determines whether the issue as defined by the arbitrator falls within the terms of the CBA. If the issue is embraced by the CBA and appropriately before the arbitrator, the award must be upheld if it can rationally be derived from the CBA. To fail the essence test, the reviewing court must determine that the award is indisputably and genuinely without foundation in, or fails to logically flow from, the CBA. Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n., 939 A.2d 855 (Pa. 2007); City of Bradford.

The trial court further noted that under the essence test, a reviewing court may not intrude into the domain of the arbitrator and become embroiled in a review of the merits, even if its interpretation of the CBA would differ from that of the arbitrator. Westmoreland; State Sys. of Higher Educ. (Cheyney Univ.) v. State College & Univ. Prof'l Ass'n (PSEA-NEA), 743 A.2d 405 (Pa. 1999). Given the narrow review of the essence test, the trial court, acting as an appellate court with limited review, cannot reexamine the evidence supporting the arbitrator's findings of fact. Id. Accordingly, the trial court refused to consider the hearing transcript and documentary evidence submitted in the arbitration proceeding.

## 2. Review of Arbitration Opinion and Award
### i. Essence Test

On May 7, 2015, the trial court issued an order denying Employer's petition for appeal of Arbitrator's opinion and award. R.R. at 189a. In an opinion in support of its order, the trial court noted the parties stipulated that Arbitrator had authority under the CBA to determine the issue of just cause for Grievant's termination. At the hearing, the parties stipulated that Arbitrator had jurisdiction to determine this issue. This satisfied the first prong of the essence test.

Turning to the second prong, the trial court determined Arbitrator's opinion and award was rationally derived from the CBA. In other words, the award had its foundation in, and logically flowed from, the CBA. (Cheney Univ.) In particular, Arbitrator determined the facts at issue in the grievance, considered the parties' arguments, and concluded Employer did not have just cause to

12

terminate Grievant. The trial court also noted the parties bargained for an undefined and unlimited just cause provision. See Article III, Section C of the CBA (Due Process); R.R. at 15a, which provides (with emphasis added):

> 1. [Employer] and the Association expressly agree that the Board and the Administration shall have the right to discipline an employee for cause. Disciplinary actions which the Board or Administration may take, provided that cause exists, shall include, but not be limited to, oral reprimand, written warning, written reprimand, unsatisfactory rating or dismissal for cause.
>
> 2. In determining whether cause exists for dismissal, that term shall specifically include, but shall not be limited to, just cause, or any conduct or action by an employee that would lawfully provide a proper basis for dismissal.

Because the CBA does not define or limit Arbitrator's authority to interpret and apply the term "just cause for dismissal" to the facts of the case, the trial court determined Arbitrator's award had its foundation in, and logically flowed from, the CBA.

### ii. Public Policy Exception

In addition, the trial court determined Arbitrator's award did not violate any well-defined and dominant public policy. Westmoreland. In addressing this narrow exception to the essence test, the trial court noted the party asserting the public policy violation has the burden of proving it. The appropriate test is not whether the grievant's actions or conduct violate a public policy, but whether the arbitrator's award violates public policy. Shamokin Area Sch. Dist. v. Am. Fed. of State, Cnty. and Mun. Emp., Dist. Council 86, 20 A.3d 579 (Pa. Cmwlth. 2011).

13

Here, the trial court observed, Arbitrator's reinstatement of Grievant, subject to a five-day suspension, did not violate any public policy concerning the protection of students from violence on school property. Arbitrator specifically found that Grievant did not harm Student, that she did not act out of anger, and that she was forthcoming, apologetic and remorseful about her conduct. See Arbitrator's Op. at 10; R.R. at 126a. Arbitrator further found that the corrective discipline imposed should change Grievant's behavior and that she would be able to effectively care for children going forward. Arbitrator's Op. at 10-11; R.R. at 126a-27a. Consequently, the trial court determined there is no public policy requiring the court to vacate Arbitrator's Award. Employer appeals.

## II. Discussion

### A. Arbitrator's Record

### 1. Argument

Employer contends the trial court erred or abused its discretion when it denied Employer's request that the transcribed record before Arbitrator, including all documentary evidence and exhibits, be made a part of the trial court's record for review, where Employer alleged Arbitrator's award violated public policy. Although an appellate court should not generally engage in the review of the merits of a grievance, Employer contends a limited exception to this highly deferential standard has been embraced where, as here, the award violates an express public policy. Westmoreland.

Employer further asserts that where the crux of the matter lies in the pure application of the public policy exception to the essence test, the Supreme

14

Court holds that the applicable standard of review is *de novo* "and our scope of review is plenary." Phila. Hous. Auth., 52 A.3d at 1121. Therefore, because Arbitrator's award implicates the public policy exception, Employer claims the trial court erred when it refused to review this case *de novo* and examine the notes of testimony from the arbitration hearing.

Employer notes Pennsylvania courts have acknowledged a well-defined and dominant public policy against violence in schools. See Shamokin Area Sch. Dist. (recognizing there is a distinct public policy of protecting students from violence on school property which is derived from the School Code). In Shamokin, this Court recognized that reinstating a school employee who actually struck a student on school grounds could trigger the established public policy of protecting students from violence on school property. However, that public policy was not implicated in Shamokin by the reinstatement of a groundskeeper who vented about his supervisor by screaming about him in a garage where no students were present. In Shamokin, the school district conditioned the groundskeeper's reinstatement upon participation in an anger management program and the completion of one year on probation.

Employer also cites Bethel Park School District v. Bethel Park Federation of Teachers, Local 1607, 55 A.3d 154 (Pa. Cmwlth. 2012). In Bethel Park, this Court determined an arbitration award that reinstated a teacher who violated a formal improvement plan and repeatedly engaged in inappropriate touching of female students violated school district policy in addition to state and federal statutes prohibiting sexual harassment of students.

15

Employer posits that in Bethel Park, Shamokin and Westmoreland, the courts reviewed the merits of the underlying grievance arbitration and assessed the factual record presented to the arbitrator in order to determine whether the award implicated, and possibly abrogated, a public policy cited by the school district. In light of these cases, Employer asserts the trial court erred and abused its discretion by not reviewing the merits of Arbitrator's award.

Further, Employer contends the trial court erred by refusing to review the testimony, documentary evidence, exhibits and Arbitrator's findings of fact. Employer cites City of Bradford, where this Court, applying the Supreme Court's decision in Westmoreland, recognized that application of the public policy exception requires the following three-step analysis (with emphasis added):

> First, the nature of the conduct leading to the discipline must be identified. Second we must determine if that conduct implicates a public policy which is 'well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests.' Third, we must determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator.

City of Bradford, 25 A.3d at 414 (citation omitted).

Employer asserts the third prong of public policy analysis, which requires consideration of the particular circumstances at hand, mandates that the

16

trial court review the hearing transcript and the arbitrator's findings of fact to determine whether the arbitrator's award poses a risk to public policy.

Summarizing, Employer asserts that in asking the trial court to review the matter *de novo*, Employer did not seek to retry the factual case on appeal, or ask the trial court to substitute its judgment for that of Arbitrator. See Appellant's Br. at 14. Rather, pursuant to Westmoreland and City of Bradford, the trial court is to review the matter *de novo* to ensure the arbitrator's findings do not violate public policy. In other words, application of the public policy exception requires a full and complete review of the transcript before the arbitrator, and a review of the merits of the dispute to determine whether the award poses an unacceptable risk to the established policies ensuring the safety of the students and the prevention of violence. Thus, Employer contends the trial court erred by refusing to review the transcribed hearing record in the arbitration proceeding.

**2. Analysis**

In Bethel Park, we noted that reviewing courts are prohibited from second-guessing an arbitrator's findings of fact and may not reject them simply because they disagree with them. Rather, the exclusive focus under the essence test is the arbitrator's interpretation of the CBA. Therefore, an arbitrator's findings of fact are not reviewable on appeal as long as the arbitrator construed or applied the CBA. Pa. State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Faculties, 98 A.3d 5 (Pa. Cmwlth. 2014); Luzerne Intermediate Unit No. 18 v. Luzerne Intermediate Educ. Ass'n, PSEA/NEA, 89 A.3d 319 (Pa. Cmwlth. 2014). As such, a transcript of the arbitration hearing is not necessary to appellate review

17

under the essence test, which is limited to issues of law. Thus, we reject Employer's contention that a court must conduct a *de novo* review of the arbitrator's findings in cases subject to the essence test. Furthermore, evidence bearing no relation to the issues raised on appeal should not be included in the reproduced record. Sims v. Pa. R.R. Co., 123 A. 676 (Pa. 1924); Pa. R.A.P. 2152.

Therefore, in resolving the issue of whether an arbitrator's award violates a well-defined, dominant public policy, there is usually no reason for a reviewing court to reexamine the transcript of the arbitrator's hearing and reevaluate the facts. Rather, only the award itself, and the legal authority supporting the implication of the public policy, are relevant to a public policy exception inquiry. To hold otherwise would result in routine review of the entire factual record every time a public employer raises the public policy exception.

Here, the only part of the record necessary for public policy review is Arbitrator's opinion and award. Employer does not specify any material which might be absent from the opinion and award but necessary for public policy review. In these circumstances, no error by the trial court is evident.

**B. Public Policy Exception**

**1. Argument**

Employer also contends the trial court erred or abused its discretion when it denied Employer's appeal and confirmed Arbitrator's award where the award violated the dominant, well-defined and ascertainable public policy requiring the protection and safety of students. In confirming Arbitrator's award,

18

Employer asserts Arbitrator fashioned a remedy that required Employer to sanction the physical mistreatment of disabled children and provided no tools to ensure that Grievant would not repeat her unacceptable behavior. Arbitrator did not require Grievant to participate in an improvement plan or undergo classroom observation to ensure that she did not repeat the same violent behavior. See Colonial Intermediate Unit #20 v. Colonial Intermediate Unit #20 Educ. Ass'n (Pa. Cmwlth., No. 839 C.D. 2014, filed February 9, 2015), 2015 WL 5162132 (unreported opinion) (arbitrator imposed 53-day suspension for grievant's inappropriate, yet remediable behavior, with the additional requirements that the grievant successfully complete a formal improvement plan created by the employer and designed to address employer's specific expectations, including the use of positive behavioral supports). In short, unlike the present case, the award in Colonial Intermediate addressed the employer's concerns and did not pose an unacceptable risk to any well-defined, dominant school law or policy.

Here, Employer asserts, Arbitrator merely suspended Grievant for five days with no improvement plan. Employer argues Grievant's minimal suspension and unconditional reinstatement violates a well-defined public policy requiring the protection of students, especially disabled and special needs children, from violence and mistreatment in schools. See Phila. Hous. Auth. (arbitrator's reinstatement of public employee who repeatedly engaged in acts of inexcusable and assaultive sexual harassment, with back pay, and without any sanctions, violated the dominant and well-defined public policy prohibiting sexual harassment in the workplace). Therefore, Employer contends the trial court erred and abused its discretion by affirming Arbitrator's award.

19

Employer further argues the trial court, in affirming Arbitrator's award, improperly focused on the reaction of Student and several bystanders to Grievant's misconduct rather than the misconduct itself. Because Student did not cry, and none of the bystanders intervened or reacted, Arbitrator dismissed Grievant's misconduct as insufficiently egregious. Employer asserts Arbitrator's reasoning essentially blames Student for his lack of crying or a physical injury. It is unreasonable, Employer urges, to require that a student sustain an actual injury before allowing a school district to enforce its obligation to protect its students.

To that end, Employer notes the reviewing court in <u>Bethel Park</u> did not discuss whether the seventh grade female students were actually offended by the grievant's inappropriate behavior in determining whether the arbitrator's award reinstating the grievant violated the public policy against sexual harassment.

Therefore, Employer reasons, Arbitrator should have determined that Grievant's conduct in pulling Student, a special needs child, across the floor for 20 feet implicated an important public policy prohibiting the mistreatment of children in schools. Consequently, even accepting the facts Arbitrator found, the trial court erred in determining Arbitrator's award did not violate a dominant, well-defined public policy against the mistreatment of students. <u>Bethel Park</u>.

## 2. Analysis

Employer does not contest the trial court's conclusion that Arbitrator's award satisfies both prongs of the essence test. Therefore, we need

only decide whether Arbitrator's award violates a well-defined and dominant public policy.

Employer's public policy argument lacks merit. Arbitrator found Grievant's version of the incident more credible than that offered by Employer. Although Arbitrator found Grievant's actions, in pulling Student, to be unacceptable, Arbitrator did not find those actions motivated by anger or intent to harm. In addition, Arbitrator did not find that Grievant's conduct harmed or abused Student, or violated school laws. See Arbitrator's Op. at 10-11; R.R. at 126a-27a. As such, Arbitrator essentially determined Grievant did not violate any well-defined or dominant public policy involving school violence.

Arbitrator also determined Grievant's conduct did not constitute just cause for her dismissal. In accord with the CBA, it is solely within Arbitrator's province to find just cause for discipline under the facts of the case. Office of the Attorney General v. Council 13, Am. Fed. of State, Cnty. and Mun. Emp., AFL-CIO (Council 13), 844 A.2d 1217 (Pa. 2004). This includes the authority to modify discipline. Abington Sch. Dist. v. Abington Sch. Serv. Personnel Ass'n, 744 A.2d 367 (Pa. Cmwlth. 2000).

Further, an arbitrator possesses the authority to fashion remedies necessary to further the intended essence of a CBA. Greater Latrobe Area Sch. Dist. v. Pa. State Educ. Ass'n, 615 A.2d 999 (Pa. Cmwlth. 1992). As such, Arbitrator had the discretion to modify Employer's discipline of Grievant from dismissal to a limited suspension.

21

We also note that the cases cited by Employer, particularly Philadelphia Housing Authority, Bethel Park and Colonial Intermediate, are factually distinguishable in that they involve repeated and significantly more egregious conduct. Philadelphia Housing Authority, and to a lesser extent, Bethel Park, involved repeated acts of deliberate sexual harassment despite repeated warnings. Here, Arbitrator found Grievant, by pulling or dragging Student to his desk, engaged in one act of unacceptable behavior for which she was immediately apologetic and remorseful. Arbitrator also found it unlikely that Grievant would ever repeat her actions.

Colonial Intermediate is likewise distinguishable. There, a special education teacher hung an offensive sign on a special needs student during class after learning the student repeatedly struck a goat while on an earlier class trip to a petting zoo. When another teacher removed the offensive sign because the student became upset and began crying, the grievant put the offensive sign back on the student. The arbitrator ultimately found in part that the grievant misapplied a behavior modification technique. In reinstating the grievant, the arbitrator did not endorse the grievant's misbehavior, but noted that the district failed to sufficiently educate the grievant about its policies and expectations. As such, the arbitrator imposed a 53-day suspension and crafted a remedy including additional training and an improvement plan.

In the present case, Arbitrator determined a 5-day suspension was sufficient to ensure that Grievant, a 10-year employee with a prior unblemished

record, would not repeat her misconduct. Arbitrator observed that Principal instructed Grievant as to alternative strategies if a similar incident should occur. Also, Arbitrator specifically found that the corrective discipline imposed would most likely change Grievant's behavior, and that she would be able to effectively care for children going forward. Arbitrator's Op. at 10-11, R.R. at 126a-27a.

## III. Conclusion

For the above reasons, we find no error or abuse of discretion in either the trial court's refusal to consider the evidentiary record in the arbitration proceeding or the court's determination that Arbitrator's award did not result in the violation of a well-defined, dominant public policy. Accordingly, we affirm.

ROBERT SIMPSON, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media Secretaries &amp;    :
Educational Support Personnel    :
Association - ESPA,PSEA-NEA    :
        :  No 965 C.D. 2015
      v.    :
        :
Rose Tree Media School District,    :
       Appellant    :

## **O R D E R**

**AND NOW**, this 21st day of March, 2016, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Delaware County is **AFFIRMED**.

ROBERT SIMPSON, Judge